**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

FIRST PROPERTY HOLDINGS, LLC
d/b/a RIZE, a Michigan limited liability
company, and THE FIRE STATION, LLC,
a Michigan limited liability company,

                                        Case No. 23-
                                        Hon.

                Plaintiffs,

v

CITY OF MENOMINEE, a Michigan municipal
corporation, O.I HOLDINGS, LLC, A Michigan
limited liability company, HIGHER LOVE
CORPORATION, INC., a Michigan  corporation,
HIGHWIRE FARMS, LLC, a Michigan limited
liability company, NU GROUP, LLC, a Michigan
limited liability company, and ROCKY NORTH,
LLC, a Michigan limited liability company.

                Defendants,

THE MIKE COX LAW FIRM, PLLC
Michael A. Cox (P43039)
17430 Laurel Park Dr. North, Ste. 120 E
Livonia, MI 48152
(734) 591-4002
mc@mikecoxlaw.com

John R. Turner (P38563)
321 E. Lake St.
PO Box 2396
Petoskey, MI 49770
(231) 348-4500
jrtlaw@umich.edu
*Attorneys for Plaintiff First Property Holdings, LLC d/b/a RIZE*

DICKINSON WRIGHT PLLC
James A. Martone (P77601)
Maureen J. Moody (P85032)
2600 W. Big Beaver Rd., Ste. 300
Troy, MI 48084
(248) 433-7200
jmartone@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Plaintiff The Fire Station LLC*

1

## COMPLAINT AND JURY DEMAND

Plaintiffs, First Property Holdings, LLC, d/b/a RIZE ("RIZE"), by and through its attorneys, The Mike Cox Law Firm, PLLC and John R. Turner, PLC, and The Fire Station, LLC ("TFS"), by and through its attorney, Dickinson Wright PLLC, for their Complaint state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff First Property Holdings, LLC d/b/a RIZE ("RIZE") is a Michigan limited liability company transacting business in Menominee County, Michigan and throughout Michigan.

2.      On September 20, 2021, Defendant City of Menominee (sometimes referred to as "City") awarded RIZE one of its two Retailer Licenses to sell adult-use recreational marihuana in the City following a competitive process required by Section 9(4) of Michigan Regulation and Taxation of Marihuana Act, Initiated Law 1of 2018, MCL 333.27951 *et seq* ("MRTMA").

3.      Plaintiff The Fire Station, LLC ("TFS") is a Michigan limited liability company transacting business in Menominee County, Michigan and throughout Michigan.

4.      On September 20, 2021, Defendant City of Menominee awarded TFS one of its two Retailer Licenses to sell adult-use recreational marihuana in the City following a competitive process required by Section 9(4) of MRTMA.

5.      Defendant City of Menominee is a municipal corporation organized under the Constitution and statutory laws of the State of Michigan, located in Menominee County, Michigan, whose City Council ("City Council"), and its members, committed the acts at issue here under the color of law.

6.      The City is not immune from lawsuit under any constitutional or statutory provision.

2

7.      Defendant OI Holdings LLC and Higher Love Corporation Inc., (collectively "OI") are related Michigan companies that are licensed marihuana entities in the State of Michigan, with retail stores in the Upper Peninsula, and were disappointed bidder-applicants for a Retailer License when the City Council awarded licenses on September 20, 2021 pursuant to the City's "Marihuana Establishments Ordinance" ("Ordinance") adopted on October 6, 2020.  OI Holdings then sued City in what became Menominee Circuit Court Master Case No. 21-17045-CZ.

8.      Defendant Highwire Farms, LLC ("Highwire") is a Michigan limited liability company that operates licensed marihuana facilities in Adrian, Michigan and Coldwater, Michigan.  It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance.  Highwire then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ.

9.      Defendant Rocky North, LLC d/b/a Green Pharm UP ("Rocky North") is a Michigan limited liability company that operates licensed marihuana facilities in the State of Michigan.  It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance. Rocky North then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ.

10.     Defendant Nu Group, LLC d/b/a Nirvana Center Provisioning ("Nu Group") is a Michigan limited liability company that operates licensed marihuana facilities in the State of Michigan.  It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance. Nu Group then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ ("Master Case").

11.     This Court has original subject-matter jurisdiction over this action because, among other reasons, this is a civil action arising under the Constitution, laws, and treaties of the United

States, including but not limited to the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. 28 U.S.C. § 1331 therefore confers federal-question jurisdiction on this Court in connection with Plaintiffs' claims.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant City of Menominee is located in the District, the remainder of the Defendants are organizations formed in the State of Michigan and do business in Michigan, all Defendants transact and conduct business in the District, and the events giving rise to Plaintiffs' claims occurred in the City of Menominee.

<u>**General Allegations**</u>

**Procedural History and Dismissal of Defendants' Prior Claims**

13.     On October 6, 2020, City Council enacted the Ordinance,[1] which provided for granting two adult-use recreational retailer permits ("Retailer Licenses").

14.     RIZE and TFS were two of fourteen companies (including OI, Highwire, Nu Group, and Rocky North) who applied for licenses pursuant to the Ordinance.

15.     As part of the application process each applicant had to complete a "City of Menominee Application Scoring Rubric" ("Rubric")[2] which numerically scored each candidate, largely based on its planned investments in Menominee.

16.     For instance, in Section 2 of the Rubric, the Rubric linked an applicant's "Ability To Operate" to its "estimated capital investment of real and/or personal property" with investments over $1,500,000 scoring the maximum score of 3 points.

---

[1] **Exhibit 1,** Ordinance
[2] **Exhibit 2**, Rubric

17.     These features of the Rubric were specifically required in XX.03.D.8 through XX.03.K of the Ordinance [3] and complied with the "competitive process" requirement of Section 9(4) of MRTMA.

18.     While the Rubric score was not completely dispositive, the City intentionally designed the Rubric to incentivize each applicant to invest heavily in Menominee and show that investment in its the application so as to allow the City to evaluate and grade that investment.

19.     RIZE and TFS relied on City's Rubric and the requirements of the same when committing to their business proposals, and ultimately, their licensing requirements. RIZE and TFS indeed pledged (and have now invested) significant resources and were two of the top three scorers when applications were evaluated.

20.     RIZE stated in its application that it planned to spend $2.059 million on its property alone and TFS represented a similar number.

21.     RIZE and TFS made these representations of multiple million-dollar investments specifically to make themselves more attractive and score higher in the competitive process because, among other things:

a.     First, the citizens of Menominee only wanted a limited number of licenses – just two – and that limitation made each license that much more valuable.

b.     Second, within the marihuana retailer business sector, it is well-known and accepted as fact that possessing a Retailer License issued by Menominee under the limited 2-license Ordinance was worth tens of millions of dollars in potential revenue and profit.

---

[3] **Exhibit, 1,** Ordinance

c.      Third, this is so because Menominee is located on the Wisconsin border and Wisconsin does not permit the retail sale of adult-use recreational marihuana and is unlikely to permit retail sales for several years.

d.      Fourth, this is further accentuated by easy access many Wisconsin citizens have to Menominee by the U.S. 41 Highway.

e.      Fifth, while Minnesota recently legalized adult use marihuana sale, it is unlikely to have a regulatory scheme for many years, and as a result, Menominee is a relatively convenient market for many Minnesota consumers for years to come.

22.     On September 20, 2021, City Council awarded its two available Retailer Licenses to RIZE and TFS.

23.     Days later, in reliance on City Council's award of Retailer Licenses, RIZE closed on its $900,000 cash purchase of property located at 3213 10th Street, Menominee, and TFS purchased its property at 3101 11th St., Menominee for more than $1,000,000.00.

24.     On October 7, 2021, City issued to RIZE and TFS their respective Provisional License(s) for Marihuana-Retail-Sales-Adult use for those locations.

25.     In the ensuing 22 months both RIZE and TFS have spent even more funds to maintain and safeguard their properties, pay property taxes to City, and now have opened and are building multi-million dollars stores as they pledged and City required them to do.

26.     After losing their bids for licenses in the September 2021 competitive process, disappointed bidders OI, Highwire, Rocky North, and Nu Group all sued City and eighteen other then-defendants in the Master Case before the 41st Circuit Court during the fall of 2021.

27.     On November 29, 2021, the Court entered an order granting intervention to both RIZE and TFS based on both MCR 2.209 (A), "Intervention of Right", and MCR 2.209(B),"

6

Permissive Intervention" to protect the property interests RIZE and TFS had in their September 21, 2021-awarded Retailer Licenses.

28.     TFS and RIZE then became integral parts of City's defense against the various then-plaintiffs' (who are now Defendants here) claims in that consolidated case and spent hundreds of thousands of dollars in legal fees in the successful defense of that Master Case.

29.     After 18 months of litigation, on May 17, 2023, the Honorable Mary Brouillette Barglind entered her final "Order Granting Defendants' Joint Motion For Dissolution Of 12/21/2021 Stipulated Stay; Denying Certain Plaintiffs' Collective Motion For Stay For Purpose Of Denying Settlement Negotiations; Entering Final Orders; And Closing The Case".

**Defendants intentionally and improperly interfere with RIZE's and TFS's licenses, business expectancies, and advantageous relationships through violations of Michigan Rule of Professional Conduct 4.2 before the Court's May 17 Master Case dismissal**

30.     While the claims that OI, Highwire, Nu Group, and Rocky North pursued against City were clearly meritless, those claims nonetheless were not "improper interference" for the purpose of the pled tortious interference count below and Plaintiffs RIZE and TFS do not contend the lawsuits were "improper interference" for the purposes of any pled counts.

31. However, before Judge Barglind dismissed the meritless claims of OI, Highwire, Nu Group, and Rocky North, those Defendants engaged in numerous acts of improper interference with RIZE's and TFS's competitively awarded licenses and the advantageous relationships and business expectancies those licenses provided.[4]

32. The Michigan Rules of Professional Conduct provide in Rule 4.2, "Communication with a Person Represented by Counsel", that "a lawyer shall not communicate about the subject

---

[4] Both RIZE and TFS have opened their retail stores as of August 1, 2023.

of the representation with a person whom the lawyer knows is represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

33.     On several occasions, one or more attorneys for Defendants contacted represented City members without legal counsel's permission or prior knowledge or consent to influence, counsel, and otherwise persuade such represented City members to take certain legal and other actions concerning the Master Case and interfere with RIZE's and TFS's licenses and business expectancies.

34.  For example, on July 13, 2022, an attorney representing OI sent a letter by electronic mail to all nine City Council members, all of whom were defendant-party opponents in the Master Case to OI and all represented by the Plunkett Cooney law firm.  Some of the emails used by OI's attorney were to Council members' non-City email addresses.

35.     OI's letter was also addressed to City's Manager, Brett Botbyl, who was also a defendant-party opponent to OI and represented by Plunkett Cooney.

36.     The OI lawyer did not seek the consent of Plunkett Cooney or its primary attorney, Matthew Cross, before directly contacting these 11 individual defendant-party opponents who were represented by Plunkett Cooney.[5]

37.     The subject line of this letter made clear it was about the Master Case: "Re: OI Holdings, LLC et al v City of Menominee, et al. Case No. 21-17083-CZ, consolidated Case No. 21-171109-CZ (sic)."

---

[5] See, for instance, RI-322, April 2, 2001, Michigan State Bar Ethics Opinion, https://www.michbar.org/opinions/ethics/numbered_opinions?OpinionID=1192&Type=6&Index=C. "A lawyer may not send a written communication to the opposing lawyer's client regarding the substance of the representation unless the opposing lawyer has consented to the communication, even if the lawyer sends a copy to opposing counsel.

38.    In this July 13, 2022 letter, OI's attorney specifically addressed the subject of Plunkett Cooney's representation of the 11 individual defendant-party opponents to OI Holdings, by urging those represented parties to **not** settle with OI's then-fellow plaintiff, Lume.

39.    The letter sent by OI's attorney instructed OI's opponents on the best legal strategy for their defense:

> "Giving Lume a license at this time and in this manner would be an extension of the unlawful favoritism and concealment that has plagued the Menominee process to date…**The global settlement approach is prudent and reasonable, and it is the only way for the City to move beyond this litigation and control the totality of the outcome"[6]**

40.    Next OI's lawyer provided the types of advice – on facts and law – that are reserved only to a party's individual counsel – not to be offered by their opponents' counsel:

> "(N)ext *I provide you the law and facts* that support OI's position and request…In essence, *the City's process violated state law in three main ways*…". [7]

41.    This communication by OI's lawyer was an attempt to provide unsolicited advice to OI's party opponents who were already represented by counsel and was done so without the prior consent of that counsel.

42.    In the same vein and on the same date, one of Rocky North's attorneys separately emailed eight members of the City Council and Clerk Brofka: all nine of these individuals were defendants in the Master Case, except Wendy Baron, who had not been on City Council when Rocky North and the other plaintiffs filed the five cases that became the Master Case.

43.    In that email, Rocky North's counsel directly contacted represented defendants, at both city and home email addresses, without the prior consent of their counsel, and commented on the purported strength of Rocky's North's case (and conversely the lack of merit in the City's and

---

[6] Emphasis in the original.
[7] Emphases added.

other defendants' defense) stating "Rocky North remains confident in its claims against the City and expects to prevail."

44.     This boastful prediction turned out to be false as Judge Barglind ultimately dismissed Rocky North's claims, but more importantly, Rocky North's counsel also instructed the represented City Council members on what actions they should or should not take – specifically telling the represented party opponents of Rocky North to not settle with Lume, otherwise, they would risk personal sanctions.

45.      Rocky North's counsel wrote: "We will pursue sanctions against the City *and the individual defendants* for such a willful and flagrant violation of the Court's Order."[8]

46.     On September 19, 2022, counsel for OI again sought to interject herself between the City's defense counsel and his clients, which included members of the City Council.

47.     On that date, the City Council agenda had a posted item which noted a ***closed session*** of the City Council to discuss OI's (and Highwire's, Rocky North's and Nu Group's) pending litigation in the Master Case against the City.

48.     This September 19 letter was sent to all nine members of the then-City Council (seven of whom were defendants), defendant City Manager, and non-party Sue Johnson, who is a City employee. The letter was sent to a mix of the members' City and home email addresses without the prior consent of their attorney, Matthew Cross of Plunkett Cooney, who was only contemporaneously carbon copied.

49.  In this letter, which was sent before closed session—and so before Mr. Cross was able to present his own advice to his own clients—OI's lawyer wrote it is the purpose of OI and "Rocky

_____

[8] Emphasis added.

10

North, Highwire and Nu Group (Proposing Parties)" to provide "a short and correct summary" of an offer they made to City Council.

50.      Much like the July 2022 letter, here the OI counsel—now on the behalf of OI, Rocky North, Highwire and Nu Group—attempted to substitute in for the City Council's own counsel, who OI's counsel apparently believed was not capable of giving his own clients "a short and correct summary" of the "Proposing Parties" settlement offer.

51.      In a section the OI lawyer entitled, "Current Settlement Offer", the OI attorney attempts to explain an apparent joint settlement offer by OI, Highwire, Rocky North, and Nu Group (who called themselves "Proposing Parties") and the value of that offer – again, supplanting or attempting to supplant the role of defense counsel to advise his clients on the relative advantages and disadvantages of an offer.

52.      In another section entitled "Alleged detrimental reliance and concerns about future litigation", the OI lawyer wrote:

> "City Manager Botbyl and Mayor Stegman have expressed concern that settlement with the plaintiffs will result in claims by RIZE and The Fire Station ('TFS') based on a 'detrimental reliance theory'.  Mr Cross [defense counsel] has not explained that legal theory to the Proposing Parties, but the Proposing Parties presume it to mean that the City is worried that RIZE and TFS would have a claim against the City…***If that is the rationale for the detrimental reliance claim, then there is little reason for concern***…"[9]

53.      Again, in this section the lawyer for OI and the other Proposing Parties offered unsolicited legal advice to her opposition's clients on legal theories and claims.  OI's counsel continued, "There is no general right to certain market conditions…The Proposing Parties are willing to stand behind their legal analysis…".

---

[9] Emphases added.

54.     This unsolicited letter to another lawyer's clients without that lawyer's consent, as those individuals were about to go into closed session specifically to get their own attorney's advice, is not only arrogant, but, more importantly, is a clear violation of MRPC 4.2.

55.     On March 21, 2023, the Highwire attorney directly contacted all of the City Council members (including several represented council members represented by Mr. Cross) by email without asking Mr. Cross for his prior consent to contact his clients.

56.     In this email, where Mr. Cross was carbon-copied but was uninformed about the content before Highwire's attorney contacted his clients, the attorney lobbied for settlement: "(i)t is our hope that you and your attorney will reach out to the Plaintiffs in the very near future to get a settlement… ."

57.  This communication was not between parties, but between a lawyer and her client's party-opponent and was directly about the subject of the representation – the ongoing litigation between Highwire and the City – that Highwire was losing in court and eventually lost when Judge Barglind dismissed all of Highwire's claims.

58.     On March 23, 2023, the OI lawyer sent another letter to all nine City Council members (seven of whom were represented), represented party City Manager Brett Botbyl, and a non-party City employee discussing the lawsuits – the subject of the representation by Plunkett Cooney and Mr. Cross – without any prior consent of defense counsel.

59.     In that letter OI's lawyer offered a legal critique of defendant Mayor Stegeman's view on the Open Meetings Act before providing the OI attorney's own legal and tactical analysis in a section entitled: "What would it mean if the City settled and awarded 7 marihuana retailer establishments licenses?".

60.     Without prior consent of defense counsel, the OI lawyer wrote about the benefits of settlement (as viewed by the parties suing the City) including waiver of trial court and Court of Appeals claims, increased tax revenues and other putative benefits to the City if the defendants settled with OI and the other plaintiffs.

61.      These repeated unauthorized and unethical and wrongful acts by OI's counsel on behalf of both OI and on behalf of the "Proposing Parties" (OI, Highwire, Rocky North, Nu Group) and, separately, the attorney for Rocky North, and the attorney for Highwire, all violated MRPC 4.2 and are *per se* improper interferences with the advantageous relationship and licensed business expectancy that both RIZE and TFS had with City as the only two licensees of the City under the Ordinance.

**Defendants' other acts of intentional and improper interference with RIZE's and TFS's licenses, business expectancies, and advantageous relationships before the Court's May 17 Master Case dismissal**

62.     At the outset of initiating litigation against the City of Menominee in the Master Case, OI not only hired Miller Johnson, a statewide law firm with over 120 lawyers with a well-respected and veteran litigation department, but decided to also retain a lawyer who primarily advertises himself as a transactional, not litigation lawyer - Joe Jones.

63.     Joe Jones is the brother of City Council member Josh Jones who, after the award of licenses to RIZE and TFS, has been a leader in the Council's push to award more than two licenses.

64.     On information and belief, OI attorney Joe Jones talked repeatedly with City Council member Josh Jones, without the prior consent and knowledge of Plunkett Cooney, during the pendency of the Master Case, about what various City Council members thought in private and a strategy of settling the litigation in manner that was favorable to OI and in a manner that would

disrupt and devalue the value of RIZE's and TFS's license and business expectancies under the Ordinance.

65.     On information and belief, OI attorney Joslin Monahan met with City Council member and represented defendant Jacqueline Nutter during the pendency of the Master Case in a Menominee bar and discussed the City Council settling the Master Case on favorable terms to OI and the other Master Case plaintiffs, and to the detriment of and disrupting the value of RIZE's and TFS's licenses under the Ordinance's 2-license regime.

66.     Ms. Monahan never sought the consent of Ms. Nutter's lawyer, Mr. Cross, before meeting with Ms. Nutter.

67.     Represented defendant and City Council Member Bill Plemel admitted at a March 20, 2023 City Council meeting that a resolution, which contained several legal recitals, a legal certification, Michigan Compiled Law citations, and otherwise contained indicia of being drafted by an attorney, was given him by OI.

68.     This legalistic resolution provided for five new licenses to go to OI, Highwire, Nu Group, Rocky North and Lume, and was done without the knowledge or prior consent of Mr. Plemel's defense counsel at Plunkett Cooney and was introduced without input or edits or other counsel from Mr. Cross, as he was not given any meaningful opportunity to review the resolution before it was introduced.

69.     Mr. Plemel introduced this resolution at the behest of OI despite Menominee's City Attorney Michael Celello pointing out, "you're settling a case that you're winning".[10]

_____

[10] Because Highwire had named City Attorney Michael Celello in its individual case that was consolidated into the Master Case, Mr. Celello did not act as litigation counsel for Menominee, but still participated in matters before the City Counsel in his role as City Attorney.

70.     Current Council Member Joe Dulak is a real estate broker in the greater Menominee area who, on information and belief, stands to gain, or has already received funds, financially through commissions or referrals, whether directly or indirectly, from the sale of properties involving OI, Highwire, Rocky North, and Nu Group.

71.     Mr. Dulak has stated at public meetings that his status as a real estate broker (who could or would presumably make money off property sales to new marihuana applicants) does not preclude him from voting on marihuana matters.

72.     On information and belief, representatives of the Defendants have mentioned this issue to Mr. Dulak.

73.     The change in ethical obligations on City officers and employees and agents between the Ordinance and the Settlement Ordinance,[11] adopted on June 29, 2023 and addressed below, provides the cover and ability for these otherwise unethical and tortious contacts and acts to occur and grow to fruition.

74.     These acts were not matters of petitioning government by citizens of Menominee, but rather were the product of profit-seeking entities, the Defendants, that engaged in well-coordinated secret and not-so secret attempts to improperly interfere with and disrupt the value of the two licenses awarded to RIZE and TFS under the Ordinance.

**City and its co-Defendants enter into an illegal settlement on May 25, 2023 that vitiates RIZE's and TFS' rights and forces City to adopt the Settlement Ordinance.**

75.     Despite Judge Barglind dismissing all the then-plaintiffs' claims on May 17, 2023 in Master Case No. 21-17045-CZ and emphatically validating both the Ordinance and the City's 2021 selection process – a total legal victory – City Council members William Plemel and Josh

---

[11] **Exhibit 4**, Settlement Ordinance, adopted 06/29/2023.

Jones led a majority of the City Council in adopting a "Settlement Agreement and Release" just one week later on May 25, 2023.

76. This Settlement Agreement and Release required the City to amend the Ordinance to provide for unlimited licenses. See **Exhibit 3**, "Settlement Agreement and Release".

77. This Settlement Agreement and Release was negotiated between the City Council and OI, Highwire, Rocky North, and Nu Group in secret to prevent the participation of either RIZE or TFS (and the public) who had vigorously defended City during the lawsuit. See Section 7 of **Exhibit 3**, "Limitation on Disclosing Contents" specifically required the secret negotiations.

78. To achieve the Settlement Agreement and Release, signed by 6 of the 9 Council members, before any public meetings or vote, the members of the City Council engaged in prohibited round robin secret voting in violation of the Open Meetings Act, Act 267 of 1976, MCL 15.261 *et seq.*

79. To make **Exhibit 3** appear to be a binding settlement and thus "force" City to change its Ordinance, in the Fifth Whereas of the recitals of **Exhibit 3**, City and Defendants OI, Highwire, Rocky North, and Nu Group (who were "Plaintiffs in the Master Case) claim this as consideration for City being forced to amend its ordinance: "(p)laintiffs may engage in further motion practice in the trial court, including motions for reconsideration" and all "(p)laintiffs plan to appeal Judge Barglind's dismissal to the Michigan Court of Appeals".

80. This ruse of adequate consideration was designed by OI, Highwire, Rocky North, and Nu Group, with some member of the City Council, to create at least four different improper tools for OI, Highwire, Rocky North, and Nu Group to interfere with RIZE's and TFS's retailer licenses:

16

(a) amending the Ordinance to permit unlimited licenses and thus devalue the 2 licenses awarded to RIZE and TFS in September of 2021;

(b) providing that OI, Highwire, Rocky North, and Nu Group will automatically receive licenses – regardless of any potential compliance issues – before those four even need to apply for a license under the new ordinance;

(c) providing that no other applicants, including RIZE and TFS and the several hundred other possible CRA-licensed marihuana retailers, can even apply for a license in Menominee until the Defendants (and Lume and Agri-Med) all get licenses; if even one of the Defendants does not get a license, no one can apply for a license; and

(d) requiring that only RIZE and TFS must honor the investment and employment promises in their 2021 applications (which exceeded $ 2 million for each of RIZE and TFS) while relieving Defendants OI, Highwire, Nu Group, and Rocky North of the representation of expenditure that they made in their 2021 applications – a huge competitive cost advantage for the Defendants and a huge disadvantage for RIZE and TFS.

81.     Section 1.A of **Exhibit 3** mandated the City Council "shall introduce" an amendment to the current Ordinance "to completely uncap the number of Licenses available" to sell marihuana on a retail basis.

82.     This uncapping was required despite the complete lack of merit in claims OI, Highwire, Rocky North and Nu Group are putatively giving up – as Judge Barglind had found on May 9, 2023 – and despite the fact that City's insurer pays all defense costs in the Master Case, just so all Defendants can claim **Exhibit 3** has the requisite consideration sufficient to "force" City (and give City Council cover) to radically amend its 2-license Ordinance.

83.     The Plemel/OI proposal of March 20, 2023 changed from five (5) new licenses (and a limit of seven retailer licenses) because some of the Defendants realized City could not just give 5 licenses to those who sued the City as that would almost certainly violate MRTMA's requirement of a competitive process when licenses are limited.

84.     For instance, OI Holdings was the 2nd lowest scorer of the 14 in the 2021 competitive process under the Ordinance, while Highwire was the 3rd lowest scorer of the 14.

85.     Indeed, legal counsel for Agri-Med (which had not sued City) told City's counsel multiple times that Agri-Med would sue City for violating MRTMA if City only gave licenses under OI's/Plemel's plan to those applicants who sued the City.

86.     Section 1.B of **Exhibit 3** next provides that Defendants, who lost their challenges in court, get a head start on any other possible applicants after the licenses are uncapped: "and ***prior to accepting any applications*** under such enactment, the City will ***award*** an additional six (6) Licenses to each of the Plaintiffs and to non-party Agri-Med as follows…"

87.     This head start is to the detriment of the hundreds of other Cannabis Regulatory Agency-approved and state-licensed entities, including RIZE and TFS (if they chose to seek a new license under the Settlement Agreement and Release as opposed to a license renewal), and of course, violates MRTMA.

88.     In this way, the Defendants, with the complicity of a majority of City Council, improperly interfered with the business expectancies of not only RIZE and TFS, but every other CRA-state license retailer that is otherwise eligible to apply in an uncapped municipality.

89.      Further, the plain language of **Exhibit 3's** Section 1.B violates MRTMA for a second reason:  if for any reason City does not award licenses to each of OI, Highwire, Nu Group and Rocky North (and non-parties Lume and Agri-Med), or if any one of those parties refuse a

license, then City cannot accept applications from *any* other state-licensed companies, which would constitute a *de facto* cap and violate Section 9(4) of MRTMA because any cap on licenses must include a competitive process under Section 9(4) of MRTMA.

90.   As noted above, during the 2021 Rubric application process each applicant, including RIZE and TFS as well as OI, Highwire, Rocky North, and Nu Group, had to make financial and expenditure commitments related to investment, building renovations, number of employees employed, and wage and compensation packages, as required in XX.03.D.8 through XX.03.K of the Ordinance which City expects to be met.

91.   Section 1.C of **Exhibit 3** requires City to relieve OI, Highwire, Nu Group and Rocky North – but not RIZE and TFS – of "any assertions/promises/plans and stated economic investments set forth in their original application package".

92.   This selective relief of 2021 Rubric application obligations gives an unequal, unethical, and improper leg up to the Defendants and interferes and disrupts the advantageous relations and business expectancy RIZE and TFS have in their current, 2021-granted licenses.

93.   This inequitable relief granted to Defendants (and Lume and Agri-Med) but not granted to RIZE and TFS and the other 2021 applicants, improperly interferes with RIZE's and TFS' advantageous relationships, especially where RIZE and TFS (a) are not guaranteed a license on applying, (b) can only apply after licenses are first granted to the Defendants and Lume and Agri-Med, and (c) get no cost relief through operation of the agreement. See Section 1.B and 1.E of **Exhibit 3**.

94.   This not only interferes with the already-granted licenses to RIZE and TFS, which are recognized as protected interests under Michigan law, but also creates the circumstance where despite purportedly uncapping licenses in Menominee, **Exhibit 3** would still require RIZE and

TFS – and only RIZE and TFS – to fulfill the "the assertions/promises/plans and stated economic investments" that RIZE and TFS made in their 2021 license applications.

95.     Section 6 of MRTMA authorizes municipalities to adopt only certain discretely enumerated ordinances, such as ordinances governing public signs or the time, place, and manner of operation of marihuana establishments.[12]

96.  Section 6 of MRTMA also limits municipalities' fees to "not more than $5,000 to defray application, administrative, and enforcement costs associated with the operation of the marihuana establishment in the municipality."[13]

97.  Section 6 of MRTMA does not authorize municipalities where the number of marihuana establishment licenses is not prohibited or limited to require an applicant to expend funds to adhere to "any assertions/promises/plans and stated economic investments set forth in their original application package" and so **Exhibit 3,** the Settlement Agreement and Release, violates Section 6 of MRTMA.

98.     Thus all six of the illegal conditions City agreed to enforce in its agreement with OI, Highwire, Rocky North, and Nu Group – to wit, (a) amending its Ordinance where there is no consideration offered; (b) granting licenses to OI, Highwire, Rocky North, and Nu Group before any of those parties are required to apply for a new license under City's new Settlement Ordinance; (c) not accepting the application of any other CRA-licensed retailer applicant until OI, Highwire, Rocky North, Nu Group, Lume, and Agri-Med are actually licensed, gives those parties an improper head start not permitted by MRTMA; (d) and as a consequence of (c), will preclude any other state qualified applicant from even applying unless all six of the named parties in the

---

[12] MCL 333.2956(6)(2).
[13] MCL 333.2956(4).

Settlement Agreement and Release are actually licensed; (e) relieving Defendants OI, Highwire, Rocky North, and Nu Group from meeting their 2021 Rubric financial representations and commitments, but not relieving RIZE and TFS; and (f) and requiring RIZE and TFS to apply for a new license without a guarantee of licensure are all improper interferences with RIZE's and TFS' licenses meant to devalue their current license, create improper competitive advantages for the Defendants while illegally burdening, disrupting, and imposing competitive disadvantage on RIZE and TFS.

99.     Echoing City Attorney Celello's comment about settling a case that City had won, Menominee City Mayor Jean Stegeman recently made this critical comment about **Exhibit 3**, Settlement Agreement and Release, which was forced by certain members of the City Council:

> "This entire situation — the marihuana licensing — if the council would have just sat back and let the legal system work out the way we knew it would — and we won — the entire thing would be done . . . . But instead, motivation that can't be logically explained has put us in the position we're in now. If we would've just trusted our attorneys and waited for the initial lawsuit to be won, which it was, this all would be behind us."

**Additional Advantage of Secrecy to allow Defendants to interfere with RIZE and TFS**

100.     The secrecy provision of **Exhibit 3,** "7. Limitation on Disclosing Contents" provision which prohibited the City and OI, Highwire, Rocky North, and Nu Group, from publicly disclosing any details of the secretly negotiated **Exhibit 3** prior to approval and execution by all parties, allowed at least Nu Group and Highwire to secretly obtain more advantageous properties closer to the Wisconsin border at cheaper prices than they had during the 2021 Rubric application process.

**The Settlement Agreement Violates the Equal Protection Clause**

101.     In addition to violating Sections 6 and 9(4) of MRTMA (and in addition to the violations of the MRPC by certain attorneys listed above), **Exhibit 3** also violates the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution and Mich Const. 1963, Art. I, § 2 as articulated by the United States Supreme 's holding in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564; 120 S Ct 1073; 145 L.Ed.2d 1060 (2000).

102.    As stated above, both RIZE and TFS already possessed protected interests in their currently awarded licenses, but **Exhibit 3**, the Settlement Agreement and Release, which forced the adoption of the Settlement Ordinance on June 29, 2023 and the other conditions that the City is to enforce – the fruit of that poisonous tree that is **Exhibit 3** – if not voided by this Court will abrogate those interests by subjecting RIZE and TFS to unequal "class of one" (or in this case, two) treatment compared to applicants who are similarly situated in all material bases and based on objective, non-discretionary standards, i.e., the regulatory cost of obtaining or maintaining a Retailer License.

103.    This is so because Defendants OI, Highwire, Rocky North, and Nu Group will receive and exercise a Retailer License for a maximum $5,000 fee, as stated in Section 6(4) of MRTMA, MCL 333.27956(4), without any requirement that each spend an additional $20,000 or $200,000 or $2,000,000 on their properties or hire a certain minimum number of employees.

104.    The same Retailer Licenses will cost RIZE and TFS – who are similarly situated in all material respects to OI, Highwire, Nu Group, and Rocky North – not just the objectively standard $5,000 fee, but also the additional objectively-verifiable cost of "any assertions/promises/plans and stated economic investments set forth in their [RIZE and TFS] original application package" which, for example, means an additional $2.059 million in objectively verifiable costs for RIZE.

105. This shocking cost differential for a Retailer License – a flat $5,000 for OI, Highwire, Rocky North, and Nu Group versus $2,064,000 ($5,000 plus $2,059,000) for RIZE – is required

22

by the Settlement Agreement and Release for the exact same license with the same rights and responsibilities.

106.    To avoid this unequal treatment, both RIZE and TFS must apply for a new license – even though they have a current license which renewable, with the greater constitutional rights granted by Michigan appellate courts  (and the lower renewal standard) – and if RIZE and TFS do apply, they are not guaranteed a new license – which is guaranteed to each of OI, Highwire, Nu Group, and Rocky North in **Exhibit 3**, the Settlement Agreement and Release.

**The Settlement Ordinance and the removal of ethical standards**

107.    Since the execution of **Exhibit 3**, the Settlement and Release Agreement, Mr. Plemel and other City Council members, and spokespersons for all the Defendants, have all stated publicly that **Exhibit 3** mandates a new ordinance uncapping licenses, and the goal of a majority of the City Council members is to meet that requirement of the Settlement and Release Agreement.

108.  It is this determination to draft an ordinance that is, among other things, prima facie evidence that all subsequent public hearings and decisions by City after May 25, 2023 have had predetermined outcomes, and any public demonstration of a procedure or hearing is just a ruse.

109.    On June 29, 2023, the City Council adopted what it called its "Repeal and Replace" ordinance as required by **Exhibit 3**, Settlement Agreement and Release, ("Settlement Ordinance").[14]

110.    The Settlement Ordinance contains only two amendments of note, the first is amending the two-license limit on Retailer licenses in Section XX.02(B) of the Ordinance to "unlimited" as **Exhibit 3** requires, and a second amendment concerning ethics that is not required

---

[14] **Exhibit 4** is the Settlement Ordinance adopted on June 29, 2023.

by **Exhibit 3** but paved the way for a majority of City Council to agree to the Settlement Agreement and Release.

111.    When the City enacted the Ordinance in October of 2020, Section XX.03(C) of the Ordinance read:

> No person who is employed by the City, acts as a consultant for the City or acts as an advisor to the City, and is involved in the implementation, administration or enforcement of this Ordinance, shall have an interest, directly or indirectly, in a Marihuana Establishment.

112.    This section in the Ordinance was similar to the "Code of Ethics", Section 2-102 to Section 2-109 of Menominee's Code of Ordinances which provides clear ethical walls to ensure elected and unelected officials do not consider their own, or their families', pecuniary interests when making or enforcing City policy.

113.  In the Settlement Ordinance, the current City Council significantly watered down the language of XX.03.C.  It now reads:

> No person who is a member of the Menominee City Council or a person who is employed by the City shall be licensed to own or operate a Marijuana Establishment.

114.    This weakening of the ethical guardrails now means that as long as a City Council member is not "licensed to own" and does not "operate" a retailer or grower or processor, that City Council member may make money from providing the Defendants and other new applicants services such as real estate brokering or sell them products needed to run the licensed facility.

115.    Further, the removal of "an interest, directly or indirectly" not only allows City Council members' family members to be involved in making money off the growing or process or retail sales of marihuana in City, but it also even allows a City Council member to own an interest in a licensed marihuana facility as he or she does is not "licensed to own or operate" the facility.

116.    There is no rational basis for this change in ethical rules except to allow City Council members to profit in some manner from the removal of caps on licensing and issuing more licenses.

117.    This loosening of common-sense ethical guardrails is further proof of backroom dealings and understandings that were improper interferences by OI, Highwire, Nu Group, and Rocky North with RIZE's and TFS' exercise of their licenses and business expectancies.

**Referendum, Special Meeting that violates the Open Meetings Act, and a Third Ordinance introduced without city attorney input.**

118.    In just over two weeks after the June 29, 2023 adoption of the Settlement Ordinance, the Committee to Stop Unlimited Marijuana Shops, a referendum ballot committee led by five Menominee citizens and organized under Article IV of the Menominee Charter and Code of Ordinances and state law, filed a referendum petition to repeal the Settlement Ordinance with the valid signatures of over 1200 City residents. This referendum petition exceeded Article IX's requirements and was done in half the time allowed under Article IX.

119.    On July 25, 2023, Menominee City Clerk Brofka found the referendum petition possessed many more valid signatures than required and so certified the referendum petition pursuant to Article IX.

120.    The City Council recognized right away it could not invalidate the referendum petition and would either have to repeal the Settlement Ordinance or put the referendum to repeal the Settlement Ordinance on the November 7, 2023 ballot.

121.    Working with OI, Highwire, Nu Group, and Rocky North, certain members of the City Council decided not to put the Settlement Ordinance to the test of the voters of Menominee in November because Defendants knew they would lose at the ballot box.

122.    In what has become the City Council's standard operating procedure when dealing with marihuana policy, three members of the City Council immediately sought a "special meeting" of City Council just two days after Clerk Brofka's certification.  The special meeting format, which can be done with merely 18 hours' notice, also has the advantage of minimizing public attendance and scrutiny.

123.    These certain City Council members called the special meeting to (a) repeal the Settlement Ordinance (which would save the City Council from the embarrassment of a loss at the ballot box) and then (b) introduce an almost identical ordinance uncapping licenses, but this time with a *de minimis* appropriation to the police department, because Article IX of City's Charter does not permit referendums for any ordinance with an appropriation.

124.  However, the special meeting agenda that was published to the public gave no notice about repealing the Settlement Ordinance to avoid a public vote at the ballot or the plan to introduce a new ordinance.

125.    Instead, the notice only stated the City Council would "adjourn to closed session" to discuss "Marijuana" and under "Motions and Resolutions" stated "Possible action for Marijuana".

126.  Importantly, the special meeting agenda did not have any draft ordinances or reports from staff which would ordinarily be attached to an agenda.

127.    At the special meeting on July 27, 2023, the City Council went into closed session but did so in violation of many provisions of Michigan's Open Meetings Act, including going into closed session without a proper motion or a roll call vote of 2/3 of the City Council members, as required MCL 15.267 and MCL 15.268 (Sections 7 and 8 of the Open Meetings Act, MCL 15.261 et seq, "OMA").

128.  Before going into this illegal closed session that violated OMA, a political activist named Casey Hoffman, who is politically allied with City Council members Plemel, Jones, and Nutter praised the City Council in the "public comments" section of the special meeting (which proceeded going into closed session) for a new marihuana ordinance with a $15,000 appropriation for the City's police department that would be introduced later at the special meeting.

129.  This statement by a non-council member that a new marihuana ordinance would be introduced (and not noticed in the agenda) surprised Mayor Stegman, City Manager Botbyl, and City Attorney Celello (who customarily drafts all ordinances), as none of them knew anything about a new ordinance being proposed that night – yet a non-member of City Council member knew about the new proposed ordinance that was drafted by lawyers other than the City Attorney.

130.  After a two-hour OMA-non-compliant closed session, the City Council returned to regular session and introduced the new, mystery ordinance ("Post Referendum Ordinance") which was virtually identical to the Settlement Ordinance, except it had a $15,000 appropriation for the City police department, which under Article IX of the Menominee's Charter would make the Post Referendum Ordinance referendum-proof.

131.  The July 27, 2023 special meeting and the introduction of the Post-Referendum Ordinance,[15] which had not been seen by the Mayor, City Manager, or City Attorney before it was introduced provides further evidence of chicanery by a majority of the City Council that was working hand-in-hand with OI, Highwire, Nu Group, and Rocky North to skirt the requirements of MRTMA, the Menominee Charter, and the Menominee Code of Ordinances to improperly interfere with RIZE's and TFS' licenses and to improperly aid the Defendants.

---

[15] **Exhibit 5 i**s the proposed new ordinance with an appropriation which is scheduled for a vote on August 21, 2023.

132.     Plaintiffs do not ask this Court to resolve those Open Meetings Act violations, but offer them as evidentiary support for the pled counts below involving due-process violations based on predetermined outcomes and tortious interference.

133.     A majority of the City Council intends to adopt the Post-Referendum Ordinance on August 21, 2023, to complete its predetermined illegal deal with OI, Highwire, Nu Group, and Rocky North and thwart, again, the will of the voters of Menominee.

### COUNT I - DENIAL OF PROCEDURAL DUE PROCESS
### (CITY)

134.     Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

135.     As set forth above, because of the secret **Exhibit 3**, Settlement Agreement and Release, which was negotiated through prohibited round-robin communications by City Council members in violation of OMA, RIZE and TFS were both denied a full and fair opportunity to be heard, and to participate in, the decision of the City Council Members to execute **Exhibit 3** and to effectively participate in the adoption of the Settlement Ordinance on June 29, 2023.

136.   The inclusion of the secrecy provision, "7. Limitation on Disclosing Contents", in **Exhibit 3** is *prima facie* evidence of this lack of procedural due process.

137.     The execution by signatures of all the former plaintiff companies' (including OI, Highwire, Nu Group, and Rocky North) lawyers and business principals, i.e. that the deal was done, before submission at a public hearing is further proof of this lack of procedural due process.

138.     The orchestrated actions by the majority of the City Council in concert with OI, Highwire, Nu Group, and Rocky North, in the face of a referendum and promulgating a new ordinance which is largely identical to prior iterations is other *prima facie* evidence of a decision made long before any public hearings occurred.

28

139.    As set forth above, RIZE and TFS were denied a full and fair opportunity to be heard and to participate in (a) **Exhibit 1**, the Settlement and Release Agreement, (b) City Council's adoption of the Settlement Ordinance on June 29, 2023, (c) the special meeting on July 27, 2023 and (d) the likely identical Post-Referendum ordinance to be adopted on August 21, 2023,  because **Exhibit 3,** Settlement and Release Agreement, which was negotiated in secret, required the adoption of ordinances like the Settlement Ordinance and the Post Referendum Ordinance required a predetermined outcome.

140.  Thus the outcome of the City Council's decision to adopt the Settlement Ordinance, the decisions of the July 27 Special Meeting, and likely adoption of the Post Referendum Ordinance were all pre-determined, as was **Exhibit 1**, the Settlement Release and Agreement.

141.    City's acts as described above deprived RIZE and TFS of their right to procedural due process, as guaranteed under the United States Constitution, including Amendments V and XIV of the United States Constitution, and the Michigan Constitution of 1963, including art 1, § 2, art 1, § 17, and art 10, § 2.

WHEREFORE, RIZE and TFS respectfully requests that this Court grant the following relief:

A.    Declare that City's failure to provide procedural due process to RIZE and TFS violated the Plaintiffs' rights and privileges under the United States Constitution, including Amendments V and XIV of the United States Constitution, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17;

B.    Declare any ordinance adopted subsequent to **Exhibit 3** to be unconstitutional and unenforceable;

29

C.     Enjoin City from enforcing any of the other terms and conditions of **Exhibit 3**, Settlement Agreement and Release, and any subsequent ordinance, in favor of OI, Highwire, Nu Group and Rocky North and/or any conditions that disadvantage RIZE and TFS.

D.     Award RIZE and TFS damages in excess of Seventy-Five Thousand Dollars ($75,000.00), as it deems just, to fully and fairly compensate RIZE and TFS for their compensatory damages, punitive damages, plus costs, interest and reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**COUNT TWO - DENIAL OF SUBSTANTIVE DUE PROCESS
(FAILURE TO ADVANCE A REASONABLE GOVERNMENTAL INTEREST)
and/or ALTERNATIVELY, ARBITRARY AND CAPRICIOUS INTERFERNECE WITH
RIZE'S AND TFS' PROPERTY INTERESTS IN THEIR INCUMBENT LICENSES
(CITY)**

142.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

143.    **Exhibit 3**, Settlement Agreement and Release, the Settlement Ordinance, the decisions of the July 27, 2023 special meeting, and the Post Referendum Ordinance  and the application of any of those by City fail to advance a reasonable governmental interest as illustrated by the recitation of the facts above and below, including those acts designed to give OI, Highwire, Nu Group, and Rocky North extra-judicial and illegal competitive advantages, and conversely, disadvantage and burden and disrupt RIZE's and TFS's business expectancies and competitive models.

144.    The acute favoritism shown to the non-City Defendants by City, and its City Council, and consequently, the disadvantageous burdens imposed by the City through **Exhibit 3**, Settlement Agreement and Release, and the fruits of this poisonous tree, the Settlement Ordinance, the Post-Referendum Ordinance, or any ordinance adopted after May 25, 2023, which are the

products of an illegal agreement and not the work of democratic petitioning by the citizenry of Menominee, grants unfettered authority and discretion to City to intrude into the free market and burden certain parties while advantaging other parties, without any corollary advancement of a reasonable advancement of governmental interest.

145.   The City's activities in connection with RIZE's and TFS' licenses fail to advance a reasonable governmental interest.

146.   In the same manner, City's actions here are not reasonably related to the public health, safety, welfare, or any other governmental interest.

147.   The acts of the City to adopt any ordinance to enforce the conditions of **Exhibit 3**, Settlement Agreement and Release, fail to advance any reasonable governmental interest and deprive RIZE and TFS of their rights and privileges secured under the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

148.   As an alternative basis, City violated the substantive due process rights of RIZE and TFS because City acted arbitrarily and capriciously through its execution of **Exhibit 3**, Settlement Agreement and Release, and any ordinances subsequent to **Exhibit 3** which each deprive RIZE and TFS of their rights and privileges secured under the United States Constitution, Amendments V and XIV, 42 U.S.C.A. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

149.   City acted arbitrarily, unreasonably and unlawful1y by placing unreasonable conditions and burdens on RIZE's and TFS's exercise of their current licenses that are not permitted by MRTMA or any other constitutional or statutory provision.

31

150.    City's activities in adopting the Settlement Ordinance and any successors, and enforcing **Exhibit 3,** Settlement Agreement and Release are not reasonably related to the public health, safety, or welfare of City's citizens, or any other governmental interest.

151.    City violated RIZE's and TFS' rights to be accorded substantive due process under the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

WHEREFORE, RIZE and TFS respectfully request this Court grant the following relief:

A.    Declare City's failure to provide substantive due process to RIZE and TFS violated the Plaintiffs' rights and privileges under the United States Constitution, including Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17;

B.    Declare City's Settlement Ordinance, and any successors, and **Exhibit 3** unconstitutional and unenforceable as applied to RIZE and TFS as violative, among other provisions, of Amendments V and XIV of the United States Constitution, 42 U.S.C. § 1983, and Const 1963 art 1, § 2.

C.    Enjoin City from enforcing any of the other terms and conditions of **Exhibit 3**, Settlement Agreement and Release, or ordinances adopted to enforce the conditions of **Exhibit 3**, in favor of OI, Highwire, Nu Group and Rocky North and/or any conditions that unlawfully disadvantage RIZE and TFS.

D.    Award RIZE and TFS damages in excess of Seventy-Five Thousand Dollars ($75,000.00), as it deems just, to fully and fairly compensate RIZE and TFS for their compensatory damages, punitive damages, costs, interest and reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## COUNT THREE – TAKING
### (CITY)

152.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

153.    Passing an ordinance and other improper acts by a municipality that impair property rights without substantially advancing a governmental interest constitute a taking without compensation in violation of the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, art 1, § 17 and art 10, § 2.

154.    **Exhibit 3**, Settlement Agreement and Release, and the fruit of that poisonous tree, including the Settlement Ordinance, Post-Referendum Ordinance, and any successors adopted after May 25, 2023, individually and collectively, effectively confiscate RIZE's and TFS' property rights by, among other things, (a) devaluing and otherwise infringing upon their licenses to the tune of millions of dollars to assist private parties and (b) burdening RIZE's and TFS' licenses with extra costs – the Rubric application costs of $2 million for each of RIZE and TFS – that no other parties are obligated to pay or bear.

155.    City's application and enforcement of the terms of Exhibit 1, the Settlement Agreement and Release, and any ordinance based on that agreement, arbitrarily places restrictions on the use of private property and deprives private property owners of their right to exercise dominion and control over their property.

156.    City's application and enforcement of the terms of the Settlement Agreement and Release, and any ordinance based on that agreement, places unlimited, subjective discretion in the hands of the City's officials without objective criteria or standards and, as such, they constitute a taking of the Properties.

157.    In addition to the permanent deprivation of RIZE's property and TFS' property, City has effectuated a taking of their properties without payment of just compensation, minimally requiring the payment of just compensation from May 25, 2023, until the relief requested here is granted.

WHEREFORE, RIZE and TFS respectfully request this Court grant the following relief:

A.    Award each RIZE and TFS just compensation in an amount more than Seventy-Five thousand dollars ($75,000.00) to fully and fairly compensate RIZE and TFS for the taking of their properties, diminution of their license values, and burdens on their licenses, to include damages, costs, interest and reasonable attorneys' fees;

B.    Declare City's various acts a taking that violates the rights and privileges of both RIZE and TFS guaranteed by the United States Constitution, including Amendments V and XIV of the United States Constitution, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17 and art 10 § 2;

C.    Declare **Exhibit 3,** Settlement Agreement and Release, and any ordinances adopted to execute, or based on, **Exhibit 3** unconstitutional and unenforceable as applied to RIZE and TFS;

D.    Declare the Settlement Ordinance, the Post Referendum Ordinance, and any successor ordinance as the byproduct and fruit of the poisonous tree of **Exhibit 3**, Settlement Agreement and Release, to be unconstitutional and unenforceable;

E.    Enjoin City taking any acts based on **Exhibit 3**, Settlement Agreement and Release and/or any ordinances adopted based on **Exhibit 3**; and

F.    Such other relief as the Court deems appropriate under the facts and circumstances here.

34

## COUNT FOUR - DENIAL OF EQUAL PROTECTION
## (CITY)

158.     Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

159.     As set forth above, the City treated both RIZE and TFS differently from other similarly-situated entities who initially applied for licenses in 2021, including OI Holdings, Highwire, Nu Group, and Rocky North, and so denied equal protection of the law to RIZE and TFS by City.

160.     The City's grants of an automatic license to OI, Highwire, Nu Group, and Rocky North in **Exhibit 3**, but not to RIZE and TFS, nor any other CRA-approved retailer applicants constitute disparate and unequal treatment of similarly situated applicants, and lacks a rational basis.

161.     The City's refusal to accept applications from any CRA-approved retailer applicants, including RIZE and TFS, unless each of OI, Highwire, Nu Group, Rocky North, Lume, and Agri-Med *first* receive a license, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as the Michigan Constitution of 1963, art 1, § 2, which provide that no person shall be denied equal protection of the law.

162.     The City's requirement that RIZE and TFS, and only RIZE and TFS of the 2021 applicants, adhere to their 2021 Rubric application representations, and not requiring the same of OI, Highwire, Nu Group, or Rocky North, discriminates against RIZE and TFS in their lawful use of their licenses.

163.     The City's requiring RIZE and TFS, to apply for a new license, instead of a renewal of their current license, to gain relief from adhering to their 2021 Rubric representations also constitutes disparate treatment without a rational basis, and along with the facts alleged above,

35

constitutes unconstitutional "class of one" treatment.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564; 120 S Ct 1073; 145 L.Ed.2d 1060 (2000).

WHEREFORE, RIZE and TFS respectfully request this Court grant the following relief:

A.      Declare City's disparate and unequal treatment of RIZE and TFS as lacking a rational basis and thus in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C.A. § 1983, and the Michigan Constitution of 1963, including art 1, § 2;

B.      Declare **Exhibit 3,** Settlement Agreement and Release, and the fruit of that poisonous tree, the Settlement Ordinance, the Post-Referendum Ordinance, and other successor ordinances, as unconstitutional and unenforceable;

C.      Enjoin the City from acting on any of the terms or provisions either **Exhibit 3,** the Settlement Agreement and Release and/or any ordinances adopted based on Exhibit 1, or to enforce the terms and conditions of **Exhibit 3**.

D.      Award RIZE and TFS damages in excess of Seventy-Five Thousand Dollars ($75,000.00) as the Court deems just, to fully and fairly compensate RIZE and TFS for their damages, plus costs, interest and reasonable attorneys' fees; and

E.      Such other relief as the Court deems appropriate under the facts and circumstances here.

## COUNT FIVE – DECLARATORY JUDGMENT
### (ALL DEFENDANTS)

164.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

165.    Under 28 U.S.C. § 2201, courts may grant declaratory relief "in a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate

pleading, may declare such the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

166.    An actual controversy exists between the parties as to the validity of **Exhibit 3,** Settlement Agreement and Release and its progeny, the Settlement Ordinance, and the actions of all Defendants related to those documents.

167.    Among other things, **Exhibit 3** is an impermissible, illegal and unconstitutional agreement because (a) it is not based on adequate consideration; (b) City does not have the authority under MRTMA to award licenses to OI, Highwire, Nu Group and Rocky North without first receiving an application; (c) City does not have the authority under MRTMA, the Due Process Clause and the Equal Protection Clause to preclude eligible applicants from applying under the Settlement ordinance, as an uncapped and unlimited licensing regime, unless and until OI, Highwire, Nu Group, Rocky North, Lume and Agri-Med have each received a license; (d) City does not have the authority under MRTMA, the Due Process Clause and the Equal Protection Clause to burden only RIZE and TFS with complying with the representations made in their Rubric applications under a Section 9(4) competitive process under MRTMA, once the same municipality amends it ordinance to an uncapped or unlimited license regime;  and (e) City does not have the authority under the Due Process Clause to require RIZE and TFS to apply as new applicants once they have vested property interests.

168.    The City does not have the authority to adopt any ordinance where it is based on and/or to execute the terms of conditions of **Exhibit 3**.

169.    Accordingly, both **Exhibit 3** and any ordinances based on or related to that exhibit are unauthorized and violate statutory law such as MRTMA while also abridging and abrogating

the rights and privileges guaranteed by both the United States Constitution and the Michigan Constitution of 1963.

WHEREFORE, Plaintiffs RIZE and TFS respectfully request that the Court:

A.     Declare **Exhibit 3**, the Settlement Agreement and Release, and any related ordinance adopted to execute the terms and conditions of **Exhibit 3** are illegal, unconstitutional and void;

B.     Enter an order memorializing that finding in order to guide the future conduct of all parties to this case;

C.     And enter an order enjoining City and all other parties from acting in reliance on either **Exhibit 3** or any ordinance related to or adopted based on the terms of **Exhibit 3**;

D.     Grant such other relief as the Court deems appropriate under the facts and circumstances here.

## COUNT SIX – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES (OI, HIGHWIRE, ROCKY NORTH, NU GROUP)

170.     Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

171.     Plaintiff RIZE have business expectancies and an advantageous relationship with the City of Menominee as a result of being awarded one of two Retailer Licenses in September of 2021 after a competitive process conducted in compliance with both MRTMA and the Ordinance.

172.     Plaintiff TFS had business expectancies and an advantageous relationship with the City of Menominee as a result of being awarded one of two Retailer Licenses in September of 2021 after a competitive process conducted in compliance with both MRTMA and the Ordinance.

173.    Because of the two-license limitation in the Ordinance and City's location on the Wisconsin border where consumers from up to four states would regularly patronize RIZE and TFS these business expectancies were worth millions of dollars based on the experience of RIZE and TFS and others in other border communities and based on data collected by the CRA and industry groups.

174.    Defendants OI, Highwire, Nu Group, and Rocky North – as former applicants in Menominee - knew of the business relationships and expectancies between RIZE and TFS and the City, and between RIZE and TFS and their customers.

175.    By their conduct, in concert with the acts of individual City Council members, described above to include, among other things, (a) unconsented-to attorney contacts to represented party opponents in violation of MRP 4.2, (b) private meetings between company agents and lawyers with City Council members about issues that inure to the pecuniary interests of City Council members, (c) the secrecy provision, Section 7, "Limitation on Disclosing Contents", in **Exhibit 3**, Settlement Agreement and Release, which allowed OI, Highwire, Nu Group, and Rocky North to secretly negotiate consensus with a majority of the City Council before either the public or RIZE or TFS could find out and voice an opinion, (d) watering down the strict ethical rules of the Ordinance to the loose prohibitions of the Settlement Ordinance (and the Post Referendum Ordinance) which allows City Council members to profit from the marihuana business in Menominee as long as those City officials do not directly or indirectly own or operate or have a license; (e) requiring the City to give OI, Highwire, Rocky North, and Nu Group a head start in the new process under the Settlement Ordinance that include: (i) OI, Highwire, Rocky North, and Nu Group get licenses before anyone else and (ii) precluding anyone from applying, including RIZE and TFS, for a license unless and until OI, Highwire, Rocky North, Nu Group get

39

licenses; and (f) effectively requiring RIZE and TFS to adhere to the multi-million pledges in their 2021 Rubric applications, while relieving OI, Highwire, Rocky North, and Nu Group of any similar representations or pledges.

176.    All these acts of interference are improper and in violation of the MRPC, various provisions of MRTMA, and common rules of ethical conduct, including the incumbent general ethical rules governing City officials in the Menominee Code of Ordinances, Division 3- Code Ethics, Section 2-102 *et seq*.

177.    The actions of Defendants were fraudulent, unlawful, unethical, unjustified, and *per se* wrong, and were done with malice for the improper purpose of causing the termination or disruption of RIZE's and TFS' licenses as well business relationships and expectancies with City and their prospective customers.

178.    As a direct and proximate result of the acts of improper interference by OI, Highwire, Nu Group, and Rocky North, RIZE and TFS have suffered both substantial irreparable and compensable injuries that were reasonably foreseeable by Defendants, including loss of goodwill, harm to their business reputations, loss of esteem and standing in the community, loss of business opportunities, as well as diminution of the value of their licenses and continuing financial burdens on their licenses that are not imposed on any others.

WHEREFORE, Plaintiffs RIZE and TFS request this Court enter judgment in their favor and against Defendants OI, Highwire, Nu Group, and Rocky North, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as the Court deems just, as well fully and fairly compensating RIZE and TFS for their damages, plus costs, interest and reasonable attorneys' fees, and grant any other relief that is just and equitable under the circumstances.

## COUNT SEVEN – INJUNCTIVE RELIEF

179.    Plaintiffs RIZE and TFS reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

180.    This Court has the authority to issue both preliminary and permanent injunctions enjoining City from enforcing unconstitutional municipal ordinances and unconstitutional municipal acts and/or the unconstitutional application by City officials of constitutionally compliant ordinance provisions.

181.    In deciding whether a party is entitled to a preliminary injunction, courts must consider whether:

      (a)    Plaintiff has shown a likelihood of success on the merits;

      (b)    Plaintiff will be irreparably harmed if an injunction is not issued;

      (c)    Issuance of a preliminary injunction would not cause substantial harm to others; and

      (d)    The public interest would be served by issuing a preliminary injunction.

182.    To issue a permanent injunction, the Court must be satisfied of the following:

      (a)    Plaintiff has suffered an irreparable injury;

      (b)    The remedies available at law are inadequate;

      (c)    The balance of hardships each party would suffer as a result of the injunction are fair; and

      (d)    An injunction would serve the public interest.

183.    RIZE and TFS have demonstrated they are likely to prevail on the merits because, among other reasons, **Exhibit 3,** Settlement Agreement and Release violates MRTMA and as well as the Equal Protection and Due Process clauses in its treatment of RIZE and TFS.

41

184.   Enjoining the violation of RIZE's and TFS' constitutional rights and privileges (and statutory rights under MRTMA) cannot cause harm, let alone substantial harm, to City; indeed, enjoining the City's unconstitutional acts will inure to City's benefit and to the benefit of the general public.

185.   There is no remedy at law that could adequately compensate Plaintiffs' for the injury to their Constitutional rights that Defendants conspired to cause.

186.   The public interest is always served by the enjoinder of unconstitutional acts, and acts that violate state statutes like MRTMA, and ethical rules such as the Michigan Rules of Professional Conduct and Menominee's longstanding ethical ordinance.

WHEREFORE, RIZE and TFS respectfully request this Court grant the following relief:

A.   Find (i) RIZE and TFS have shown a likelihood of success on the merits; (ii) RIZE and TFS have shown irreparable harm; (iii) entry of an injunction will not cause substantial or undue harm to others; and (iv) the public interest is served by entry of an injunction against City's unconstitutional acts and statutory violations.

B.   Enter an order enjoining City from enforcing any of the conditions of **Exhibit 1**, Settlement Agreement and Release, as well as any fruit of this poisonous tree, to include any ordinances adopted to execute **Exhibit 3**, the Settlement Ordinance or applying any of the terms of either of those documents against RIZE and/or TFS.

### COUNT EIGHT – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

187.   Plaintiffs RIZE and TFS reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

188.    "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019).

189.    To prove a civil conspiracy claim, a plaintiff must show that there was a (1) single plan (2) to accomplish the same general objective (3) that an overt action was taken to accomplish.

190.    Here, the Defendants conspired to perform and performed actions to cause injury to RIZE's and TFS' Constitutional rights to due process and equal protection of the law.

191.    A majority of the Menominee City Council, acting on behalf of Defendant City, created a plan with the private Defendants to open the door to profiteering by members of the Menominee City Council, permit new marijuana businesses to engage in private commerce without making the same substantial publicly beneficial investment commitments that RIZE and TFS were required to make, and to deprive Menominee's citizens from participating in—or even knowing about—deliberations or decisions on Menominee public policy.

192.    Their actions amounted to nothing more than an ill-concealed conspiracy to deprive RIZE and TFS of their Constitutional rights to due process and equal protection of the law and to tortiously interfere with the business expectancies that RIZE and TFS rightfully developed as a result of the substantial financial commitments they made in their 2021 Rubric applications.

193.    The conspirators accomplished their plan through, among other things, (a) unconsented-to attorney contacts to represented party opponents in violation of MRP 4.2, (b) private meetings between company agents and lawyers with City Council members about issues that inure to the pecuniary interests of City Council members, (c) the secrecy provision, Section 7, "Limitation on Disclosing Contents", in **Exhibit 3**, Settlement Agreement and Release, which allowed OI, Highwire, Nu Group, and Rocky North to secretly negotiate consensus with a majority of the City Council before either the public or RIZE or TFS could find out and voice an opinion,

(d) watering down the strict ethical rules of the Ordinance to the loose prohibitions of the Settlement Ordinance (and the Post Referendum Ordinance) which allows City Council members to profit from the marihuana business in Menominee as long as those City officials do not directly or indirectly own or operate or have a license; (e) requiring the City to give OI, Highwire, Rocky North, and Nu Group a head start in the new process under the Settlement Ordinance that include: (i) OI, Highwire, Rocky North, and Nu Group get licenses before anyone else and (ii) precluding anyone from applying, including RIZE and TFS, for a license unless and until OI, Highwire, Rocky North, Nu Group get licenses; and (f) effectively requiring RIZE and TFS to adhere to the multi-million pledges in their 2021 Rubric applications, while relieving OI, Highwire, Rocky North, and Nu Group of any similar representations or pledges.

WHEREFORE, RIZE and TFS respectfully request this Court grant the following relief:

A.      Declare City's disparate and unequal treatment of RIZE and TFS as lacking a rational basis and thus in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C.A. § 1983, and the Michigan Constitution of 1963, including art 1, § 2;

B.      Declare **Exhibit 3,** Settlement Agreement and Release, and the fruit of that poisonous tree, the Settlement Ordinance, the Post-Referendum Ordinance, and other successor ordinances, as unconstitutional and unenforceable;

C.      Enjoin the City from acting on any of the terms or provisions either **Exhibit 3,** the Settlement Agreement and Release and/or any ordinances adopted based on Exhibit 1, or to enforce the terms and conditions of **Exhibit 3**.

D.      Award RIZE and TFS damages in excess of Seventy-Five Thousand Dollars ($75,000.00) as the Court deems just, to fully and fairly compensate RIZE and TFS for their damages, plus costs, interest and reasonable attorneys' fees; and

E.      Such other relief as the Court deems appropriate under the facts and circumstances

here.


Respectfully submitted,


**THE MIKE COX LAW FIRM, PLLC,**               **DICKINSON WRIGHT PLLC**
By:    /s/ Michael A. Cox                                        By: /s/ James. A Martone
Michael A. Cox (P43039)                               James A. Martone (P77601)
Attorneys for RIZE                                          Attorneys for The Fire Station LLC
17430 Laurel Park Dr., North, Suite 120 E      2600 W. Big Beaver Rd., Ste. 300
Livonia, MI 48154                                           Troy, MI 48084
Phone: (734) 591-4002                                  (248) 433-7200
Fax: (734) 591-4006                                      jmartone@dickinsonwright.com
mc@mikecoxlaw.com                                   mmoodv@dickinsonwright.com


**JOHN R. TURNER PLC**

By: /s/ John R. Turner
John R. Turner (P38563)
Attorney for RIZE
321 East Lake Street
PO Box 2396
Petoskey, MI 49770
(231) 348-4500
jrtlaw@umich.edu

Dated: August 21, 2023

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

FIRST PROPERTY HOLDINGS, LLC
d/b/a RIZE, a Michigan limited liability
company, and THE FIRE STATION, LLC,
a Michigan limited liability company,

                                                    Case No. 23-
                                                    Hon.

                  Plaintiffs,

v

CITY OF MENOMINEE, a Michigan municipal
corporation, O.I HOLDINGS, LLC, A Michigan
limited liability company, HIGHER LOVE
CORPORATION, INC., a Michigan  corporation,
HIGHWIRE FARMS, LLC, a Michigan limited
liability company, NU GROUP, LLC, a Michigan
limited liability company, and ROCKY NORTH,
LLC, a Michigan limited liability company.

                  Defendants,

---

THE MIKE COX LAW FIRM, PLLC
Michael A. Cox (P43039)
17430 Laurel Park Dr. North, Ste. 120 E
Livonia, MI 48152
(734) 591-4002
mc@mikecoxlaw.com

John R. Turner (P38563)
321 E. Lake St.
PO Box 2396
Petoskey, MI 49770
(231) 348-4500
jrtlaw@umich.edu
*Attorneys for Plaintiff First Property Holdings, LLC*
*d/b/a RIZE*

DICKINSON WRIGHT PLLC
James A. Martone (P77601)
Maureen J. Moody (P85032)
2600 W. Big Beaver Rd., Ste. 300
Troy, MI 48084
(248) 433-7200
jmartone@dickinsonwright.com
mmoody@dickinsonwright.com
*Attorneys for Plaintiff The Fire Station LLC*

---

## JURY DEMAND

Plaintiffs First Property Holdings, LLC  by and through their attorneys, The Mike Cox Law Firm, PLLC and The Fire Station, LLC, by and through their attorneys, Dickinson Wright PLLC, hereby demand a trial by jury.

Respectfully submitted,

**THE MIKE COX LAW FIRM, PLLC,**
By:  ___/s/ Michael A. Cox_____
Michael A. Cox (P43039)
Attorneys for RIZE
17430 Laurel Park Dr., North, Suite 120 E
Livonia, MI 48154
Phone: (734) 591-4002
Fax: (734) 591-4006
mc@mikecoxlaw.com

**DICKINSON WRIGHT PLLC**
By:  ___/s/ James A. Martone___
James A. Martone (P77601)
Maureen J. Moody (P85032)
Attorneys for The Fire Station LLC
2600 W. Big Beaver Rd., Ste. 300
Troy, MI 48084
(248) 433-7200
jmartone@dickinsonwright.com
mmoodv@dickinsonwright.com

**JOHN R. TURNER PLC**

By: /s/ John R. Turner_____
John R. Turner (P38563)
Attorney for RIZE
321 East Lake Street
PO Box 2396
Petoskey, MI 49770
(231) 348-4500
jrtlaw@umich.edu

 Dated: August 21, 2023