IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

FIRST PROPERTY HOLDINGS, LLC
d/b/a RIZE, et al

       Plaintiffs,

-vs-                                 Case No: 2:23cv161
                                        Honorable Robert J. Jonker
CITY OF MENOMINEE, et al

       Defendants.
_____

**DEFENDANT CITY OF MENOMINEE'S ANSWER TO PLAINTIFFS' COMPLAINT.
AFFIRMATIVE DEFENSES AND JURY DEMAND**

Defendant, City of Menominee, by and through its attorneys, Plunkett Cooney, and

for its answer to Plaintiff's Complaint, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff First Property Holdings, LLC d/b/a RIZE ("RIZE") is a Michigan limited liability company transacting business in Menominee County, Michigan and throughout Michigan.

**ANSWER:**    **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 1.**

2.      On September 20, 2021, Defendant City of Menominee (sometimes referred to as "City") awarded RIZE one of its two Retailer Licenses to sell adult-use recreational marihuana in the City following a competitive process required by Section 9(4) of Michigan Regulation and Taxation of Marihuana Act, Initiated Law 1 of 2018, MCL 333.27951 *et seq* ("MRTMA").

**ANSWER:**    **It is admitted that First Property Holdings, LLC was granted a retailer**

**license on September 20, 2021. The defendant is without knowledge or**

**information sufficient to form a belief as to the truth of the remaining**

**allegations contained in paragraph 2.**

3.     Plaintiff The Fire Station, LLC ("TFS") is a Michigan limited liability company transacting business in Menominee County, Michigan and throughout Michigan.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.**

4.     On September 20, 2021, Defendant City of Menominee awarded TFS one of its two Retailer Licenses to sell adult-use recreational marihuana in the City following a competitive process required by Section 9(4) of MRTMA.

**ANSWER:**     **It is admitted that TFS was granted a retailer license on September 20, 2021. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.**

5.     Defendant City of Menominee is a municipal corporation organized under the Constitution and statutory laws of the State of Michigan, located in Menominee County, Michigan, whose City Council ("City Council"), and its members, committed the acts at issue here under the color of law.

**ANSWER:**     **It is admitted that the City is a municipality incorporated under the laws of the state of Michigan. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5.**

6.     The City is not immune from lawsuit under any constitutional or statutory provision.

**ANSWER:**     **Paragraph 6 contains improperly pled legal contentions instead of factual allegations. The defendant denies as untrue the improperly pled legal contentions to the extent that a response is required.**

7.     Defendant OI Holdings LLC and Higher Love Corporation Inc., (collectively "OI") are related Michigan companies that are licensed marihuana entities in the State of Michigan, with retail stores in the Upper Peninsula, and were disappointed bidder-applicants for a Retailer License when the City Council awarded licenses on September 20, 2021 pursuant to the City's "Marihuana Establishments Ordinance" ("Ordinance") adopted on

October 6, 2020. OI Holdings then sued City in what became Menominee Circuit Court Master Case No. 21-17045-CZ.

**ANSWER:** **It is admitted that OI Holdings LLC filed suit against the defendant in Case No. 21-17045-CZ. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

8.      Defendant Highwire Farms, LLC ("Highwire") is a Michigan limited liability company that operates licensed marihuana facilities in Adrian, Michigan and Coldwater, Michigan. It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance. Highwire then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ.

**ANSWER:** **It is admitted that Highwire Farms, LLC filed suit against the defendant in Case No. 21-17045-CZ. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

9.      Defendant Rocky North, LLC d/b/a Green Pharm UP ("Rocky North") is a Michigan limited liability company that operates licensed marihuana facilities in the State of Michigan. It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance. Rocky North then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ.

**ANSWER:** **It is admitted that Rocky North, LLC filed suit against the defendant in Case No. 21-17045-CZ. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

10.      Defendant Nu Group, LLC d/b/a Nirvana Center Provisioning ("Nu Group") is a Michigan limited liability company that operates licensed marihuana facilities in the State of Michigan. It was a disappointed bidder-applicant for a Retailer License when the City Council awarded licenses on September 20, 2021, pursuant to the Ordinance. Nu Group then sued City and became part of Menominee Circuit Court Master Case No. 21-17045-CZ ("Master Case").

**ANSWER:**     **It is admitted that Nu Group, LLC filed suit against the defendant in Case**

**No. 21-17045-CZ. The defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the remaining allegations**

**contained in this paragraph.**

11.     This Court has original subject-matter jurisdiction over this action because, among other reasons, this is a civil action arising under the Constitution, laws, and treaties of the United States, including but not limited to the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. 28 U.S.C. § 1331 therefore confers federal-question jurisdiction on this Court in connection with Plaintiffs' claims.

**ANSWER:**     **The defendant denies that this Court has subject matter jurisdiction over**

**this case.**

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant City of Menominee is located in the District, the remainder of the Defendants are organizations formed in the State of Michigan and do business in Michigan, all Defendants transact and conduct business in the District, and the events giving rise to Plaintiffs' claims occurred in the City of Menominee.

**ANSWER:**     **The defendant denies that venue is proper as this Court lacks subject**

**matter jurisdiction over this case.**

## General Allegations

**Procedural History and Dismissal of Defendants' Prior Claims**

13.     On October 6, 2020, City Council enacted the Ordinance, which provided for granting two adult-use recreational retailer permits ("Retailer Licenses").

**ANSWER:**     **Admitted.**

14.     RIZE and TFS were two of fourteen companies (including OI, Highwire, Nu Group, and Rocky North) who applied for licenses pursuant to the Ordinance.

**ANSWER:**     **Admitted.**

15.     As part of the application process each applicant had to complete a "City of Menominee Application Scoring Rubric" ("Rubric") which numerically scored each candidate, largely based on its planned investments in Menominee.

**ANSWER:**      **It is admitted that a City of Menominee Application Scoring Rubric was a**

**portion of the application for a recreational retailer permit. The**

**remaining allegations contained in paragraph 15 are denied as untrue.**

16.      For instance, in Section 2 of the Rubric, the Rubric linked an applicant's "Ability To Operate" to its "estimated capital investment of real and/or personal property" with investments over $1,500,000 scoring the maximum score of 3 points.

**ANSWER:**      **It is admitted that the Scoring Rubric took a number of factors into**

**consideration, including estimated investments.**

17.      These features of the Rubric were specifically required in XX.03.D.8 through XX.03.K of the Ordinance and complied with the "competitive process" requirement of Section 9(4) of MRTMA.

**ANSWER:**      **It is admitted that the application for a recreational retailer permit was**

**in compliance with all applicable state and local laws. The defendant is**

**without knowledge or information sufficient to form a belief as to the**

**truth of the remaining allegations contained in paragraph 17.**

18.      While the Rubric score was not completely dispositive, the City intentionally designed the Rubric to incentivize each applicant to invest heavily in Menominee and show that investment in its the application so as to allow the City to evaluate and grade that investment.

**ANSWER:**      **It is admitted that the Scoring Rubric was a portion of the application for**

**a recreational retailer permit. The remaining allegations contained in**

**paragraph 18 are denied as untrue.**

19.      RIZE and TFS relied on City's Rubric and the requirements of the same when committing to their business proposals, and ultimately, their licensing requirements. RIZE and TFS indeed pledged (and have now invested) significant resources and were two of the top three scorers when applications were evaluated.

**ANSWER:**      **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 19.**

20.     RIZE stated in its application that it planned to spend $2.059 million on its property alone and TFS represented a similar number.

**ANSWER:     The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 20.**

21.     RIZE and TFS made these representations of multiple million-dollar investments specifically to make themselves more attractive and score higher in the competitive process because, among other things:

   a.     First, the citizens of Menominee only wanted a limited number of licenses – just two – and that limitation made each license that much more valuable.
   b.     Second, within the marihuana retailer business sector, it is well-known and accepted as fact that possessing a Retailer License issued by Menominee under the limited 2-license Ordinance was worth tens of millions of dollars in potential revenue and profit.
   c.     Third, this is so because Menominee is located on the Wisconsin border and Wisconsin does not permit the retail sale of adult-use recreational marihuana and is unlikely to permit retail sales for several years.
   d.     Fourth, this is further accentuated by easy access many Wisconsin citizens have to Menominee by the U.S. 41 Highway.
   e.     Fifth, while Minnesota recently legalized adult use marihuana sale, it is unlikely to have a regulatory scheme for many years, and as a result, Menominee is a relatively convenient market for many Minnesota consumers for years to come.

**ANSWER:     The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 21.**

22.     On September 20, 2021, City Council awarded its two available Retailer Licenses to RIZE and TFS.

**ANSWER:     Admitted.**

23.     Days later, in reliance on City Council's award of Retailer Licenses, RIZE closed on its $900,000 cash purchase of property located at 3213 10th Street, Menominee, and TFS purchased its property at 3101 11th St., Menominee for more than $1,000,000.00.

**ANSWER:     The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 23.**

24.     On October 7, 2021, City issued to RIZE and TFS their respective Provisional License(s) for Marihuana-Retail-Sales-Adult use for those locations.

**ANSWER:**    Admitted.

25.    In the ensuing 22 months both RIZE and TFS have spent even more funds to maintain and safeguard their properties, pay property taxes to City, and now have opened and are building multi-million dollars stores as they pledged and City required them to do.

**ANSWER:**    **It is admitted that Rize and TFS have paid their property taxes over the 22 month period in question. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 25.**

26.    After losing their bids for licenses in the September 2021 competitive process, disappointed bidders OI, Highwire, Rocky North, and Nu Group all sued City and eighteen other then-defendants in the Master Case before the 41st Circuit Court during the fall of 2021.

**ANSWER:**    **It is admitted defendant was sued by those entities in 2021. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26.**

27.    On November 29, 2021, the Court entered an order granting intervention to both RIZE and TFS based on both MCR 2.209 (A), "Intervention of Right", and MCR 2.209(B)," Permissive Intervention" to protect the property interests RIZE and TFS had in their September 21, 2021-awarded Retailer Licenses.

**ANSWER:**    **It is admitted that the 41st Circuit Court granted Rize and TFS the right to intervene in Case No. 21-17045-CZ. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and improperly pled legal contentions contained in paragraph 27.**

28.    TFS and RIZE then became integral parts of City's defense against the various then-plaintiffs' (who are now Defendants here) claims in that consolidated case and spent hundreds of thousands of dollars in legal fees in the successful defense of that Master Case.

**ANSWER:**    **It is admitted that TFS and Rize joined in the defense of the City in the Master Case. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.**

29.    After 18 months of litigation, on May 17, 2023, the Honorable Mary Brouillette Barglind entered her final "Order Granting Defendants' Joint Motion For Dissolution Of 12/21/2021 Stipulated Stay; Denying Certain Plaintiffs' Collective Motion For Stay For Purpose Of Denying Settlement Negotiations; Entering Final Orders; And Closing The Case".

**ANSWER:**    **Admitted.**

30.    While the claims that OI, Highwire, Nu Group, and Rocky North pursued against City were clearly meritless, those claims nonetheless were not "improper interference" for the purpose of the pled tortious interference count below and Plaintiffs RIZE and TFS do not contend the lawsuits were "improper interference" for the purposes of any pled counts.

**ANSWER:**    **Paragraph 30 contains improperly pled legal contentions instead of factual allegations. The defendant denies as untrue the improperly pled legal contentions to the extent that a response is required.**

31.    However, before Judge Barglind dismissed the meritless claims of OI, Highwire, Nu Group, and Rocky North, those Defendants engaged in numerous acts of improper interference with RIZE's and TFS's competitively awarded licenses and the advantageous relationships and business expectancies those licenses provided.

**ANSWER:**    **Paragraph 31 contains improperly pled legal contentions instead of factual allegations. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 31.**

32.    The Michigan Rules of Professional Conduct provide in Rule 4.2, "Communication with a Person Represented by Counsel", that "a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows is represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

**ANSWER:**     **Paragraph 32 contains improperly pled legal contentions instead of**

**factual allegations. The defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the legal contentions**

**contained in paragraph 32.**

33.     On several occasions, one or more attorneys for Defendants contacted represented City members without legal counsel's permission or prior knowledge or consent to influence, counsel, and otherwise persuade such represented City members to take certain legal and other actions concerning the Master Case and interfere with RIZE's and TFS's licenses and business expectancies.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 33.**

34.     For example, on July 13, 2022, an attorney representing OI sent a letter by electronic mail to all nine City Council members, all of whom were defendant-party opponents in the Master Case to OI and all represented by the Plunkett Cooney law firm. Some of the emails used by OI's attorney were to Council members' non-City email addresses.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 34.**

35.     OI's letter was also addressed to City's Manager, Brett Botbyl, who was also a defendant-party opponent to OI and represented by Plunkett Cooney.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 35.**

36.     The OI lawyer did not seek the consent of Plunkett Cooney or its primary attorney, Matthew Cross, before directly contacting these 11 individual defendant-party opponents who were represented by Plunkett Cooney.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the factual allegations contained in paragraph 36.**

**Paragraph 36 also contains improperly pled legal contentions. The**

**defendant is without knowledge or information sufficient to form a belief**

**as to the truth of the legal contentions contained in paragraph 36.**

37.     The subject line of this letter made clear it was about the Master Case:  "Re: OI Holdings, LLC et al v City of Menominee, et al.  Case No. 21-17083-CZ, consolidated Case No. 21-171109-CZ (sic).

**ANSWER:**     **It is admitted that the letter is accurately quoted. The defendant is**

**without knowledge or information sufficient to form a belief as to the**

**truth of the remaining allegations contained in paragraph 37.**

38.     In this July 13, 2022 letter, OI's attorney specifically addressed the subject of Plunkett Cooney's representation of the 11 individual defendant-party opponents to OI Holdings, by urging those represented parties to *not* settle with OI's then-fellow plaintiff, Lume.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 38.**

39.     The letter sent by OI's attorney instructed OI's opponents on the best legal strategy for their defense:

> "Giving Lume a license at this time and in this manner would be an extension of the unlawful favoritism and concealment that has plagued the Menominee process to date...**The global settlement approach is prudent and reasonable, and it is the only way for the City to move beyond this litigation and control the totality of the outcome**"[1]

**ANSWER:**     **It is admitted that the letter is accurately quoted. The defendant is**

**without knowledge or information sufficient to form a belief as to the**

**truth of the remaining allegations contained in paragraph 39.**

40.     Next OI's lawyer provided the types of advice – on facts and law – that are reserved only to a party's individual counsel – not to be offered by their opponents' counsel:

[1]Emphasis in the original.

"(N)ext *I provide you the law and facts* that support OI's position and request...In essence, *the City's process violated state law in three main ways*...".[2]

**ANSWER:**     **It is admitted that the letter is accurately quoted. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40.**

41.     This communication by OI's lawyer was an attempt to provide unsolicited advice to OI's party opponents who were already represented by counsel and was done so without the prior consent of that counsel.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 41. Paragraph 41 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 41.**

42.     In the same vein and on the same date, one of Rocky North's attorneys separately emailed eight members of the City Council and Clerk Brofka: all nine of these individuals were defendants in the Master Case, except Wendy Baron, who had not been on City Council when Rocky North and the other plaintiffs filed the five cases that became the Master Case.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 42. Paragraph 42 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 42.**

43.     In that email, Rocky North's counsel directly contacted represented defendants, at both city and home email addresses, without the prior consent of their counsel, and commented on the purported strength of Rocky's North's case (and conversely

---

[2] Emphasis added.

the lack of merit in the City's and other defendants' defense) stating "Rocky North remains confident in its claims against the City and expects to prevail."

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 43. Paragraph 43 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 43.**

44. This boastful prediction turned out to be false as Judge Barglind ultimately dismissed Rocky North's claims, but more importantly, Rocky North's counsel also instructed the represented City Council members on what actions they should or should not take – specifically telling the represented party opponents of Rocky North to not settle with Lume, otherwise, they would risk personal sanctions.

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 44. Paragraph 44 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 44.**

45. Rocky North's counsel wrote: "We will pursue sanctions against the City *and the individual defendants* for such a willful and flagrant violation of the Court's Order."[3]

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 45.**

46. On September 19, 2022, counsel for OI again sought to interject herself between the City's defense counsel and his clients, which included members of the City Council.

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 46.**

[3]Emphasis added.

47.     On that date, the City Council agenda had a posted item which noted a *closed session* of the City Council to discuss OI's (and Highwire's, Rocky North's and Nu Group's) pending litigation in the Master Case against the City.

**ANSWER:     It is admitted that defendant's City Council agenda for September 19, 2022, noted a closed session would be undertaken. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47.**

48.     This September 19 letter was sent to all nine members of the then-City Council (seven of whom were defendants), defendant City Manager, and non-party Sue Johnson, who is a City employee. The letter was sent to a mix of the members' City and home email addresses without the prior consent of their attorney, Matthew Cross of Plunkett Cooney, who was only contemporaneously carbon copied.

**ANSWER:     The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 48. Paragraph 48 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 48.**

49.     In this letter, which was sent before closed session—and so before Mr. Cross was able to present his own advice to his own clients—OI's lawyer wrote it is the purpose of OI and "Rocky North, Highwire and Nu Group (Proposing Parties)" to provide "a short and correct summary" of an offer they made to City Council.

**ANSWER:     The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 49. Paragraph 49 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 49.**

50.     Much like the July 2022 letter, here the OI counsel—now on the behalf of OI, Rocky North, Highwire and Nu Group—attempted to substitute in for the City Council's own

counsel, who OI's counsel apparently believed was not capable of giving his own clients "a short and correct summary" of the "Proposing Parties" settlement offer.

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 50. Paragraph 50 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 50.**

51. In a section the OI lawyer entitled, "Current Settlement Offer", the OI attorney attempts to explain an apparent joint settlement offer by OI, Highwire, Rocky North, and Nu Group (who called themselves "Proposing Parties") and the value of that offer – again, supplanting or attempting to supplant the role of defense counsel to advise his clients on the relative advantages and disadvantages of an offer.

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 51. Paragraph 51 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 51.**

52. In another section entitled "Alleged detrimental reliance and concerns about future litigation", the OI lawyer wrote:

> "City Manager Botbyl and Mayor Stegman have expressed concern that settlement with the plaintiffs will result in claims by RIZE and The Fire Station ('TFS') based on a 'detrimental reliance theory'. Mr Cross [defense counsel] has not explained that legal theory to the Proposing Parties, but the Proposing Parties presume it to mean that the City is worried that RIZE and TFS would have a claim against the City...***If that is the rationale for the detrimental reliance claim, then there is little reason for concern***..."[4]

**ANSWER:** **It is admitted that plaintiff accurately quotes the letter in question.**

53. Again, in this section the lawyer for OI and the other Proposing Parties offered unsolicited legal advice to her opposition's clients on legal theories and claims. OI's counsel

---

[4]Emphasis added.

continued, "There is no general right to certain market conditions...The Proposing Parties are willing to stand behind their legal analysis...".

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 53. Paragraph 53 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 53.**

54.     This unsolicited letter to another lawyer's clients without that lawyer's consent, as those individuals were about to go into closed session specifically to get their own attorney's advice, is not only arrogant, but, more importantly, is a clear violation of MRPC 4.2.

**ANSWER:** **Paragraph 54 contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 54.**

55.     On March 21, 2023, the Highwire attorney directly contacted all of the City Council members (including several represented council members represented by Mr. Cross) by email without asking Mr. Cross for his prior consent to contact his clients.

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.**

56.     In this email, where Mr. Cross was carbon-copied but was uninformed about the content before Highwire's attorney contacted his clients, the attorney lobbied for settlement: "(i)t is our hope that you and your attorney will reach out to the Plaintiffs in the very near future to get a settlement... ."

**ANSWER:** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56.**

57.     This communication was not between parties, but between a lawyer and her client's party-opponent and was directly about the subject of the representation – the ongoing litigation between Highwire and the City – that Highwire was losing in court and eventually lost when Judge Barglind dismissed all of Highwire's claims.

**ANSWER:**      **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 57. Paragraph 57 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 57.**

58.     On March 23, 2023, the OI lawyer sent another letter to all nine City Council members (seven of whom were represented), represented party City Manager Brett Botbyl, and a non-party City employee discussing the lawsuits – the subject of the representation by Plunkett Cooney and Mr. Cross – without any prior consent of defense counsel.

**ANSWER:**      **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 58.**

59.     In that letter OI's lawyer offered a legal critique of defendant Mayor Stegeman's view on the Open Meetings Act before providing the OI attorney's own legal and tactical analysis in a section entitled: "What would it mean if the City settled and awarded 7 marihuana retailer establishments licenses?".

**ANSWER:**      **It is admitted that a portion of the letter in question is accurately quoted. Paragraph 59 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 59.**

60.     Without prior consent of defense counsel, the OI lawyer wrote about the benefits of settlement (as viewed by the parties suing the City) including waiver of trial court and Court of Appeals claims, increased tax revenues and other putative benefits to the City if the defendants settled with OI and the other plaintiffs.

**ANSWER:**      **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 60. Paragraph 60 also contains improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 60.**

61.     These repeated unauthorized and unethical and wrongful acts by OI's counsel on behalf of both OI and on behalf of the "Proposing Parties" (OI, Highwire, Rocky North, Nu Group) and, separately, the attorney for Rocky North, and the attorney for Highwire, all violated MRPC 4.2 and are *per se* improper interferences with the advantageous relationship and licensed business expectancy that both RIZE and TFS had with City as the only two licensees of the City under the Ordinance.

**ANSWER:     The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the factual allegations contained in paragraph 61.**

**Paragraph 61 also contains improperly pled legal contentions. The**

**defendant is without knowledge or information sufficient to form a belief**

**as to the truth of the legal contentions contained in paragraph 61.**

62.     At the outset of initiating litigation against the City of Menominee in the Master Case, OI not only hired Miller Johnson, a statewide law firm with over 120 lawyers with a well-respected and veteran litigation department, but decided to also retain a lawyer who primarily advertises himself as a transactional, not litigation lawyer - Joe Jones.

**ANSWER:     The defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the factual allegations contained in paragraph 62.**

63.     Joe Jones is the brother of City Council member Josh Jones who, after the award of licenses to RIZE and TFS, has been a leader in the Council's push to award more than two licenses.

**ANSWER:     It is admitted that Joe Jones and Josh Jones are brothers. The defendant**

**is without knowledge or information sufficient to form a belief as to the**

**truth of the remaining factual allegations contained in paragraph 63.**

64.     On information and belief, OI attorney Joe Jones talked repeatedly with City Council member Josh Jones, without the prior consent and knowledge of Plunkett Cooney, during the pendency of the Master Case, about what various City Council members thought in private and a strategy of settling the litigation in manner that was favorable to OI and in a manner that would disrupt and devalue the value of RIZE's and TFS's license and business expectancies under the Ordinance.

**ANSWER:     The allegations contained in paragraph 64 are denied as untrue.**

65.     On information and belief, OI attorney Joslin Monahan met with City Council member and represented defendant Jacqueline Nutter during the pendency of the Master Case in a Menominee bar and discussed the City Council settling the Master Case on favorable terms to OI and the other Master Case plaintiffs, and to the detriment of and disrupting the value of RIZE's and TFS's licenses under the Ordinance's 2-license regime.

**ANSWER:**     **It is admitted that Ms. Monahan met with a City Council member. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65.**

66.     Ms. Monahan never sought the consent of Ms. Nutter's lawyer, Mr. Cross, before meeting with Ms. Nutter.

**ANSWER:**     **Admitted.**

67.     Represented defendant and City Council Member Bill Plemel admitted at a March 20, 2023 City Council meeting that a resolution, which contained several legal recitals, a legal certification, Michigan Compiled Law citations, and otherwise contained indicia of being drafted by an attorney, was given him by OI.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 67.**

68.     This legalistic resolution provided for five new licenses to go to OI, Highwire, Nu Group, Rocky North and Lume, and was done without the knowledge or prior consent of Mr. Plemel's defense counsel at Plunkett Cooney and was introduced without input or edits or other counsel from Mr. Cross, as he was not given any meaningful opportunity to review the resolution before it was introduced.

**ANSWER:**     **It is admitted that a resolution was provided for five new licenses to be issued. It is denied as untrue that they were intended to be granted to any specific company. The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 68.**

69.     Mr. Plemel introduced this resolution at the behest of OI despite Menominee's City Attorney Michael Celello pointing out, "you're settling a case that you're winning".[5]

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 69.**

70.     Current Council Member Joe Dulak is a real estate broker in the greater Menominee area who, on information and belief, stands to gain, or has already received funds, financially through commissions or referrals, whether directly or indirectly, from the sale of properties involving OI, Highwire, Rocky North, and Nu Group.

**ANSWER:**     **It is admitted that Joe Dulak is a City Council member for defendant. The remaining allegations contained in paragraph 70 are denied as untrue.**

71.     Mr. Dulak has stated at public meetings that his status as a real estate broker (who could or would presumably make money off property sales to new marihuana applicants) does not preclude him from voting on marihuana matters.

**ANSWER:**     **It is admitted that Mr. Dulak has stated at public meetings that his status as a real estate broker does not preclude him from voting on marihuana matters. The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 71.**

72.     On information and belief, representatives of the Defendants have mentioned this issue to Mr. Dulak.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 72.**

73.     The change in ethical obligations on City officers and employees and agents between the Ordinance and the Settlement Ordinance,[6] adopted on June 29, 2023 and addressed below, provides the cover and ability for these otherwise unethical and tortious contacts and acts to occur and grow to fruition.

---

[5]Because Highwire had named City Attorney Michael Celello in its individual case that was consolidated into the Master Case, Mr. Celello did not act as litigation counsel for Menominee, but still participated in matters before the City County in his role as City Attorney.
[6]**Exhibit 4,** Settlement Ordinance, adopted 06/29/2023.

**ANSWER:**      **Paragraph 73 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

74.     These acts were not matters of petitioning government by citizens of Menominee, but rather were the product of profit-seeking entities, the Defendants, that engaged in well-coordinated secret and not-so secret attempts to improperly interfere with and disrupt the value of the two licenses awarded to RIZE and TFS under the Ordinance.

**ANSWER:**      **Paragraph 74 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

75.     Despite Judge Barglind dismissing all the then-plaintiffs' claims on May 17, 2023 in Master Case No. 21-17045-CZ and emphatically validating both the Ordinance and the City's 2021 selection process – a total legal victory – City Council members William Plemel and Josh Jones led a majority of the City Council in adopting a "Settlement Agreement and Release" just one week later on May 25, 2023.

**ANSWER:**      **It is admitted that a majority of the City Council voted to adopt a Settlement Agreement and Release in light of the likelihood of further appellate litigation stemming from case No. 21-17045-CZ. Paragraph 75 contains further improperly pled legal contentions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 75.**

76.     This Settlement Agreement and Release required the City to amend the Ordinance to provide for unlimited licenses. See **Exhibit 3**, "Settlement Agreement and Release".

**ANSWER:**      **The Settlement Agreement and release speaks for itself. Any allegation contained in paragraph 76 made contrary to its terms is denied as untrue.**

77.     This Settlement Agreement and Release was negotiated between the City Council and OI, Highwire, Rocky North, and Nu Group in secret to prevent the participation of either RIZE or TFS (and the public) who had vigorously defended City during the lawsuit. See Section 7 of **Exhibit 3,** "Limitation on Disclosing Contents" specifically required the secret negotiations.

**ANSWER:**     **The Settlement Agreement and release speaks for itself. Any allegation**

**contained in paragraph 77 made contrary to its terms is denied as**

**untrue.**

78.     To achieve the Settlement Agreement and Release, signed by 6 of the 9 Council members, before any public meetings or vote, the members of the City Council engaged in prohibited round robin secret voting in violation of the Open Meetings Act, Act 267 of 1976, MCL 15.261 *et seq.*

**ANSWER:**     **Paragraph 78 contains improperly pled legal contentions. To the extent**

**a response is needed, defendant denies these legal contentions as**

**untrue.**

79.     To make **Exhibit 3** appear to be a binding settlement and thus "force" City to change its Ordinance, in the Fifth Whereas of the recitals of **Exhibit 3**, City and Defendants OI, Highwire, Rocky North, and Nu Group (who were "Plaintiffs in the Master Case) claim this as consideration for City being forced to amend its ordinance: "(p)laintiffs may engage in further motion practice in the trial court, including motions for reconsideration" and all "(p)laintiffs plan to appeal Judge Barglind's dismissal to the Michigan Court of Appeals".

**ANSWER:**     **The Settlement Agreement and release speaks for itself. Any allegation**

**contained in paragraph 79 made contrary to its terms is denied as**

**untrue. Paragraph 79 further contains improperly pled legal**

**contentions. To the extent a response is needed, defendant denies these**

**legal contentions as untrue.**

80.     This ruse of adequate consideration was designed by OI, Highwire, Rocky North, and Nu Group, with some member of the City Council, to create at least four different improper tools for OI, Highwire, Rocky North, and Nu Group to interfere with RIZE's and TFS's retailer licenses:

(a) amending the Ordinance to permit unlimited licenses and thus devalue the 2 licenses awarded to RIZE and TFS in September of 2021;

(b) providing that OI, Highwire, Rocky North, and Nu Group will automatically receive licenses – regardless of any potential compliance issues – before those four even need to apply for a license under the new ordinance;

(c) providing that no other applicants, including RIZE and TFS and the several hundred other possible CRA-licensed marihuana retailers, can even apply for a license in Menominee until the Defendants (and Lume and Agri-Med) all get licenses; if even one of the Defendants does not get a license, no one can apply for a license; and

(d) requiring that only RIZE and TFS must honor the investment and employment promises in their 2021 applications (which exceeded $ 2 million for each of RIZE and TFS) while relieving Defendants OI, Highwire, Nu Group, and Rocky North of the representation of expenditure that they made in their 2021 applications – a huge competitive cost advantage for the Defendants and a huge disadvantage for RIZE and TFS.

**ANSWER:**    **The factual allegations contained in paragraph 80 are denied as untrue.**

**Paragraph 80 further contains improperly pled legal contentions. To the**

**extent a response is needed, defendant denies these legal contentions as**

**untrue.**

81.    Section 1.A of **Exhibit 3** mandated the City Council "shall introduce" an amendment to the current Ordinance "to completely uncap the number of Licenses available" to sell marihuana on a retail basis.

**ANSWER:**    **The Settlement Agreement and release speaks for itself. Any allegation**

**contained in paragraph 81 made contrary to its terms is denied as**

**untrue.**

82.    This uncapping was required despite the complete lack of merit in claims OI, Highwire, Rocky North and Nu Group are putatively giving up – as Judge Barglind had found on May 9, 2023 – and despite the fact that City's insurer pays all defense costs in the Master Case, just so all Defendants can claim Exhibit 3 has the requisite consideration sufficient to "force" City (and give City Council cover) to radically amend its 2-license Ordinance.

**ANSWER:**    **The Settlement Agreement and release speaks for itself. Any allegation**

**contained in paragraph 82 made contrary to its terms is denied as**

**untrue. Paragraph 82 further contains improperly pled legal**

**contentions. To the extent a response is needed, defendant denies these**

**legal contentions as untrue.**

83.    The Plemel/OI proposal of March 20, 2023 changed from five (5) new licenses (and a limit of seven retailer licenses) because some of the Defendants realized City could not just give 5 licenses to those who sued the City as that would almost certainly violate MRTMA's requirement of a competitive process when licenses are limited.

**ANSWER:**    **The factual allegations contained in paragraph 83 are denied as untrue.**

**Paragraph 83 further contains improperly pled legal contentions. To the**

**extent a response is needed, defendant denies these legal contentions as**

**untrue.**

84.    For instance, OI Holdings was the 2nd lowest scorer of the 14 in the 2021 competitive process under the Ordinance, while Highwire was the 3rd lowest scorer of the 14.

**ANSWER:**    **The allegations contained in paragraph 84 are denied as untrue.**

85.    Indeed, legal counsel for Agri-Med (which had not sued City) told City's counsel multiple times that Agri-Med would sue City for violating MRTMA if City only gave licenses under OI's/Plemel's plan to those applicants who sued the City.

**ANSWER:**    **It is admitted that Agri-Med threatened to sue defendant depending on**

**to whom licenses were granted. The defendant is without knowledge or**

**information sufficient to form a belief as to the truth of the remaining**

**allegations contained in paragraph 85.**

86.    Section 1.B of **Exhibit 3** next provides that Defendants, who lost their challenges in court, get a head start on any other possible applicants after the licenses are uncapped: "and *prior to accepting any applications* under such enactment, the City will *award* an additional six (6) Licenses to each of the Plaintiffs and to non-party Agri-Med as follows..."

**ANSWER:**    **Paragraph 86 further contains improperly pled legal contentions. To the**

**extent a response is needed, defendant denies these legal contentions as**

**untrue.**

87.    This head start is to the detriment of the hundreds of other Cannabis Regulatory Agency-approved and state-licensed entities, including RIZE and TFS (if they chose to seek a new license under the Settlement Agreement and Release as opposed to a license renewal), and of course, violates MRTMA.

**ANSWER:**    **The allegations contained in paragraph 87 are denied as untrue.**

88.    In this way, the Defendants, with the complicity of a majority of City Council, improperly interfered with the business expectancies of not only RIZE and TFS, but every other CRA-state license retailer that is otherwise eligible to apply in an uncapped municipality.

**ANSWER:**    **The factual allegations contained in paragraph 88 are denied as untrue.**

**Paragraph 88 further contains improperly pled legal contentions. To the**

**extent a response is needed, defendant denies these legal contentions as**

**untrue.**

89.    Further, the plain language of **Exhibit 3'**s Section 1.B violates MRTMA for a second reason: if for any reason City does not award licenses to each of OI, Highwire, Nu Group and Rocky North (and non-parties Lume and Agri-Med), or if any one of those parties refuse a license, then City cannot accept applications from *any* other state-licensed companies, which would constitute a *de facto* cap and violate Section 9(4) of MRTMA because any cap on licenses must include a competitive process under Section 9(4) of MRTMA.

**ANSWER:**    **Paragraph 89 contains improperly pled legal contentions. To the extent**

**a response is needed, defendant denies these legal contentions as**

**untrue.**

90.    As noted above, during the 2021 Rubric application process each applicant, including RIZE and TFS as well as OI, Highwire, Rocky North, and Nu Group, had to make financial and expenditure commitments related to investment, building renovations, number of employees employed, and wage and compensation packages, as required in XX.03.D.8 through XX.03.K of the Ordinance which City expects to be met.

**ANSWER:**    **The Rubric in question speaks for itself. Any allegation contained in**

**paragraph 90 made contrary to its terms is denied as untrue.**

91.    Section 1.C of **Exhibit 3** requires City to relieve OI, Highwire, Nu Group and Rocky North – but not RIZE and TFS – of "any assertions/promises/plans and stated economic investments set forth in their original application package".

**ANSWER:**     **The Settlement Agreement and release speaks for itself. Any allegation contained in paragraph 91 made contrary to its terms is denied as untrue.**

92.     This selective relief of 2021 Rubric application obligations gives an unequal, unethical, and improper leg up to the Defendants and interferes and disrupts the advantageous relations and business expectancy RIZE and TFS have in their current, 2021-granted licenses.

**ANSWER:**     **The factual allegations contained in paragraph 92 are denied as untrue. Paragraph 92 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

93.     This inequitable relief granted to Defendants (and Lume and Agri-Med) but not granted to RIZE and TFS and the other 2021 applicants, improperly interferes with RIZE's and TFS' advantageous relationships, especially where RIZE and TFS (a) are not guaranteed a license on applying, (b) can only apply after licenses are first granted to the Defendants and Lume and Agri-Med, and (c) get no cost relief through operation of the agreement. See Section 1.B and 1.E of **Exhibit 3.**

**ANSWER:**     **Paragraph 93 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

94.     This not only interferes with the already-granted licenses to RIZE and TFS, which are recognized as protected interests under Michigan law, but also creates the circumstance where despite purportedly uncapping licenses in Menominee, Exhibit 3 would still require RIZE and TFS – and only RIZE and TFS – to fulfill the "the assertions/promises/plans and stated economic investments" that RIZE and TFS made in their 2021 license applications.

**ANSWER:**     **Paragraph 94 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

95.     Section 6 of MRTMA authorizes municipalities to adopt only certain discretely enumerated ordinances, such as ordinances governing public signs or the time, place, and manner of operation of marihuana establishments.[7]

**ANSWER:**     **Paragraph 95 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

96.     Section 6 of MRTMA also limits municipalities' fees to "not more than $5,000 to defray application, administrative, and enforcement costs associated with the operation of the marihuana establishment in the municipality."[8]

**ANSWER:**     **Paragraph 96 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

97.     Section 6 of MRTMA does not authorize municipalities where the number of marihuana establishment licenses is not prohibited or limited to require an applicant to expend funds to adhere to "any assertions/promises/plans and stated economic investments set forth in their original application package" and so **Exhibit 3**, the Settlement Agreement and Release, violates Section 6 of MRTMA.

**ANSWER:**     **Paragraph 97 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

98.     Thus all six of the illegal conditions City agreed to enforce in its agreement with OI, Highwire, Rocky North, and Nu Group – to wit, (a) amending its Ordinance where there is no consideration offered; (b) granting licenses to OI, Highwire, Rocky North, and Nu Group before any of those parties are required to apply for a new license under City's new Settlement Ordinance; (c) not accepting the application of any other CRA-licensed retailer applicant until OI, Highwire, Rocky North, Nu Group, Lume, and Agri-Med are actually licensed, gives those parties an improper head start not permitted by MRTMA; (d) and as a consequence of (c), will preclude any other state qualified applicant from even applying unless all six of the named parties in the Settlement Agreement and Release are actually licensed; (e) relieving Defendants OI, Highwire, Rocky North, and Nu Group from meeting their 2021 Rubric financial representations and commitments, but not relieving RIZE and

---

[7]MCL 333.2956(6)(2).
[8]MCL 333.2956(4).

TFS; and (f) and requiring RIZE and TFS to apply for a new license without a guarantee of licensure are all improper interferences with RIZE's and TFS' licenses meant to devalue their current license, create improper competitive advantages for the Defendants while illegally burdening, disrupting, and imposing competitive disadvantage on RIZE and TFS.

**ANSWER:**   **The factual allegations contained in paragraph 98 are denied as untrue.**

   **Paragraph 98 further contains improperly pled legal contentions. To the**

   **extent a response is needed, defendant denies these legal contentions as**

   **untrue.**

99.   Echoing City Attorney Celello's comment about settling a case that City had won, Menominee City Mayor Jean Stegeman recently made this critical comment about Exhibit 3, Settlement Agreement and Release, which was forced by certain members of the City Council:

> "This entire situation — the marihuana licensing — if the council would have just sat back and let the legal system work out the way we knew it would — and we won — the entire thing would be done . . . . But instead, motivation that can't be logically explained has put us in the position we're in now. If we would've just trusted our attorneys and waited for the initial lawsuit to be won, which it was, this all would be behind us."

**ANSWER:**   **The defendant is without knowledge or information sufficient to form a**

   **belief as to the truth and accuracy of the quotation offered in paragraph**

   **99.**

100.   The secrecy provision of **Exhibit 3**, "7. Limitation on Disclosing Contents" provision which prohibited the City and OI, Highwire, Rocky North, and Nu Group, from publicly disclosing any details of the secretly negotiated **Exhibit 3** prior to approval and execution by all parties, allowed at least Nu Group and Highwire to secretly obtain more advantageous properties closer to the Wisconsin border at cheaper prices than they had during the 2021 Rubric application process.

**ANSWER:**   **Paragraph 100 contains improperly pled legal contentions. To the extent**

   **a response is needed, defendant denies these legal contentions as**

   **untrue. Defendant is without knowledge or information sufficient to**

**form a belief as to the truth of the factual allegations contained in**

**paragraph 100.**

101.    In addition to violating Sections 6 and 9(4) of MRTMA (and in addition to the violations of the MRPC by certain attorneys listed above), **Exhibit 3** also violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Mich Const. 1963, Art. I, § 2 as articulated by the United States Supreme 's holding in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564; 120 S Ct 1073; 145 L.Ed.2d 1060 (2000).

<u>**ANSWER:**</u>    **Paragraph 101 contains improperly pled legal contentions. To the extent**

**a response is needed, defendant denies these legal contentions as**

**untrue.**

102.    As stated above, both RIZE and TFS already possessed protected interests in their currently awarded licenses, but **Exhibit 3**, the Settlement Agreement and Release, which forced the adoption of the Settlement Ordinance on June 29, 2023 and the other conditions that the City is to enforce – the fruit of that poisonous tree that is **Exhibit 3** – if not voided by this Court will abrogate those interests by subjecting RIZE and TFS to unequal "class of one" (or in this case, two) treatment compared to applicants who are similarly situated in all material bases and based on objective, non-discretionary standards, i.e., the regulatory cost of obtaining or maintaining a Retailer License.

<u>**ANSWER:**</u>    **Paragraph 102 contains improperly pled legal contentions. To the extent**

**a response is needed, defendant denies these legal contentions as**

**untrue.**

103.    This is so because Defendants OI, Highwire, Rocky North, and Nu Group will receive and exercise a Retailer License for a maximum $5,000 fee, as stated in Section 6(4) of MRTMA, MCL 333.27956(4), without any requirement that each spend an additional $20,000 or $200,000 or $2,000,000 on their properties or hire a certain minimum number of employees.

<u>**ANSWER:**</u>    **The allegations contained in paragraph 103 are denied as untrue.**

104.    The same Retailer Licenses will cost RIZE and TFS – who are similarly situated in all material respects to OI, Highwire, Nu Group, and Rocky North – not just the objectively standard $5,000 fee, but also the additional objectively-verifiable cost of "any assertions/promises/plans and stated economic investments set forth in their [RIZE and TFS] original application package" which, for example, means an additional $2.059 million in objectively verifiable costs for RIZE.

**ANSWER:**    **The factual allegations contained in paragraph 104 are denied as untrue.**

**Paragraph 104 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

105.    This shocking cost differential for a Retailer License – a flat $5,000 for OI, Highwire, Rocky North, and Nu Group versus $2,064,000 ($5,000 plus $2,059,000) for RIZE – is required by the Settlement Agreement and Release for the exact same license with the same rights and responsibilities.

**ANSWER:**    **The allegations contained in paragraph 105 are denied as untrue.**

106.    To avoid this unequal treatment, both RIZE and TFS must apply for a new license – even though they have a current license which renewable, with the greater constitutional rights granted by Michigan appellate courts (and the lower renewal standard) – and if RIZE and TFS do apply, they are not guaranteed a new license – which is guaranteed to each of OI, Highwire, Nu Group, and Rocky North in **Exhibit 3**, the Settlement Agreement and Release.

**ANSWER:**    **The factual allegations contained in paragraph 106 are denied as untrue.**

**Paragraph 106 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

107.    Since the execution of **Exhibit 3**, the Settlement and Release Agreement, Mr. Plemel and other City Council members, and spokespersons for all the Defendants, have all stated publicly that **Exhibit 3** mandates a new ordinance uncapping licenses, and the goal of a majority of the City Council members is to meet that requirement of the Settlement and Release Agreement.

**ANSWER:**    **It is admitted that the defendant is bound by the terms of its legal agreements. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 107.**

108.    It is this determination to draft an ordinance that is, among other things, prima facie evidence that all subsequent public hearings and decisions by City after May 25, 2023 have had predetermined outcomes, and any public demonstration of a procedure or hearing is just a ruse.

**ANSWER:**    **The allegations contained in paragraph 108 are denied as untrue.**

109.    On June 29, 2023, the City Council adopted what it called its "Repeal and Replace" ordinance as required by **Exhibit 3**, Settlement Agreement and Release, ("Settlement Ordinance").[9]

**ANSWER:**    **Admitted.**

110.    The Settlement Ordinance contains only two amendments of note, the first is amending the two-license limit on Retailer licenses in Section XX.02(B) of the Ordinance to "unlimited" as **Exhibit 3** requires, and a second amendment concerning ethics that is not required by **Exhibit 3** but paved the way for a majority of City Council to agree to the Settlement Agreement and Release.

**ANSWER:**    **The Settlement Agreement and release speaks for itself. Any allegation contained in paragraph 110 made contrary to its terms is denied as untrue. The remaining factual allegations contained in paragraph 110 are denied as untrue. Paragraph 110 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

111.    When the City enacted the Ordinance in October of 2020, Section XX.03(C) of the Ordinance read:

No person who is employed by the City, acts as a consultant for the City or acts as an advisor to the City, and is involved in the implementation, administration or enforcement of this Ordinance, shall have an interest, directly or indirectly, in a Marihuana Establishment.

**ANSWER:**    **The Ordinance speaks for itself. Any allegation contained in paragraph 111 made contrary it its terms is denied as untrue.**

---

[9]**Exhibit 4** is the Settlement Ordinance adopted on June 29, 2023.

112.   This section in the Ordinance was similar to the "Code of Ethics", Section 2-102 to Section 2-109 of Menominee's Code of Ordinances which provides clear ethical walls to ensure elected and unelected officials do not consider their own, or their families', pecuniary interests when making or enforcing City policy.

**ANSWER:**     **Paragraph 112 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

113.   In the Settlement Ordinance, the current City Council significantly watered down the language of XX.03.C. It now reads:

No person who is a member of the Menominee City Council or a person who is employed by the City shall be licensed to own or operate a Marijuana Establishment.

**ANSWER:**     **The Ordinance speaks for itself. Any allegations contained in paragraph 113 made contrary to its terms are denied as untrue. Paragraph 113 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

114.   This weakening of the ethical guardrails now means that as long as a City Council member is not "licensed to own" and does not "operate" a retailer or grower or processor, that City Council member may make money from providing the Defendants and other new applicants services such as real estate brokering or sell them products needed to run the licensed facility.

**ANSWER:**     **Paragraph 114 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

115.   Further, the removal of "an interest, directly or indirectly" not only allows City Council members' family members to be involved in making money off the growing or process or retail sales of marihuana in City, but it also even allows a City Council member to own an interest in a licensed marihuana facility as he or she does is not "licensed to own or operate" the facility.

**ANSWER:**     **The factual allegations contained in paragraph 115 are denied as untrue. Paragraph 115 further contains improperly pled legal contentions. To**

the extent a response is needed, defendant denies these legal contentions as untrue.

116.    There is no rational basis for this change in ethical rules except to allow City Council members to profit in some manner from the removal of caps on licensing and issuing more licenses.

**ANSWER:**    **The factual allegations contained in paragraph 116 are denied as untrue. Paragraph 116 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

117.    This loosening of common-sense ethical guardrails is further proof of backroom dealings and understandings that were improper interferences by OI, Highwire, Nu Group, and Rocky North with RIZE's and TFS' exercise of their licenses and business expectancies.

**ANSWER:**    **The factual allegations contained in paragraph 117 are denied as untrue. Paragraph 117 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

118.    In just over two weeks after the June 29, 2023 adoption of the Settlement Ordinance, the Committee to Stop Unlimited Marijuana Shops, a referendum ballot committee led by five Menominee citizens and organized under Article IV of the Menominee Charter and Code of Ordinances and state law, filed a referendum petition to repeal the Settlement Ordinance with the valid signatures of over 1200 City residents. This referendum petition exceeded Article IX's requirements and was done in half the time allowed under Article IX.

**ANSWER:**    **Paragraph 118 contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

119.    On July 25, 2023, Menominee City Clerk Brofka found the referendum petition possessed many more valid signatures than required and so certified the referendum petition pursuant to Article IX.

**ANSWER:**      **It is admitted that the referendum petition was certified on July 25, 2023.**

120.    The City Council recognized right away it could not invalidate the referendum petition and would either have to repeal the Settlement Ordinance or put the referendum to repeal the Settlement Ordinance on the November 7, 2023 ballot.

**ANSWER:**      **The allegations contained in paragraph 120 are denied as untrue.**

121.    Working with OI, Highwire, Nu Group, and Rocky North, certain members of the City Council decided not to put the Settlement Ordinance to the test of the voters of Menominee in November because Defendants knew they would lose at the ballot box.

**ANSWER:**      **The allegations contained in paragraph 121 are denied as untrue.**

122.    In what has become the City Council's standard operating procedure when dealing with marihuana policy, three members of the City Council immediately sought a "special meeting" of City Council just two days after Clerk Brofka's certification. The special meeting format, which can be done with merely 18 hours' notice, also has the advantage of minimizing public attendance and scrutiny.

**ANSWER:**      **It is admitted that the defendant's City Council held a special meeting in accordance with all applicable rules, ordinances, and laws. The remaining allegations contained in paragraph 122 are denied as untrue.**

123.    These certain City Council members called the special meeting to (a) repeal the Settlement Ordinance (which would save the City Council from the embarrassment of a loss at the ballot box) and then (b) introduce an almost identical ordinance uncapping licenses, but this time with a *de minimis* appropriation to the police department, because Article IX of City's Charter does not permit referendums for any ordinance with an appropriation.

**ANSWER:**      **It is admitted that the defendant's City Council held a special meeting in accordance with all applicable rules, ordinances, and laws. The remaining allegations contained in paragraph 123 are denied as untrue.**

124.    However, the special meeting agenda that was published to the public gave no notice about repealing the Settlement Ordinance to avoid a public vote at the ballot or the plan to introduce a new ordinance.

**ANSWER:**     **The agenda and notice for the special meeting speaks for itself. Any allegations contained in paragraph 124 made contrary to its plain language are denied as untrue.**

125.    Instead, the notice only stated the City Council would "adjourn to closed session" to discuss "Marijuana" and under "Motions and Resolutions" stated "Possible action for Marijuana".

**ANSWER:**     **The agenda and notice for the special meeting speaks for itself. Any allegations contained in paragraph 125 made contrary to its plain language are denied as untrue.**

126.    Importantly, the special meeting agenda did not have any draft ordinances or reports from staff which would ordinarily be attached to an agenda.

**ANSWER:**     **The agenda and notice for the special meeting speaks for itself. Any allegations contained in paragraph 126 made contrary to its plain language are denied as untrue.**

127.    At the special meeting on July 27, 2023, the City Council went into closed session but did so in violation of many provisions of Michigan's Open Meetings Act, including going into closed session without a proper motion or a roll call vote of 2/3 of the City Council members, as required MCL 15.267 and MCL 15.268 (Sections 7 and 8 of the Open Meetings Act, MCL 15.261 et seq, "OMA").

**ANSWER:**     **It is admitted that defendant's City Council went into closed session during a properly noticed special meeting on July 27, 2023. Paragraph 127 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

128.    Before going into this illegal closed session that violated OMA, a political activist named Casey Hoffman, who is politically allied with City Council members Plemel, Jones, and Nutter praised the City Council in the "public comments" section of the special meeting (which proceeded going into closed session) for a new marihuana ordinance with a $15,000 appropriation for the City's police department that would be introduced later at the special meeting.

**ANSWER:**     **It is admitted that defendant's City Council went into closed session during a properly noticed special meeting on July 27, 2023. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations contained in paragraph 128. Paragraph 128 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

129.    This statement by a non-council member that a new marihuana ordinance would be introduced (and not noticed in the agenda) surprised Mayor Stegman, City Manager Botbyl, and City Attorney Celello (who customarily drafts all ordinances), as none of them knew anything about a new ordinance being proposed that night – yet a non-member of City Council member knew about the new proposed ordinance that was drafted by lawyers other than the City Attorney.

**ANSWER:**     **The defendant is without knowledge or information sufficient to form a belief as to the truth the allegations contained in paragraph 129.**

130.    After a two-hour OMA-non-compliant closed session, the City Council returned to regular session and introduced the new, mystery ordinance ("Post Referendum Ordinance") which was virtually identical to the Settlement Ordinance, except it had a $15,000 appropriation for the City police department, which under Article IX of the Menominee's Charter would make the Post Referendum Ordinance referendum-proof.

**ANSWER:**     **It is admitted that defendant's City Council went into closed session during a properly noticed special meeting on July 27, 2023. Paragraph 130 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

131.    The July 27, 2023 special meeting and the introduction of the Post-Referendum Ordinance,[10] which had not been seen by the Mayor, City Manager, or City Attorney before it was introduced provides further evidence of chicanery by a majority of the City Council that was working hand-in-hand with OI, Highwire, Nu Group, and Rocky

---

[10]**Exhibit 5** is the proposed new ordinance with an appropriation which is scheduled for a vote on August 21, 2023.

North to skirt the requirements of MRTMA, the Menominee Charter, and the Menominee Code of Ordinances to improperly interfere with RIZE's and TFS' licenses and to improperly aid the Defendants.

**ANSWER:**    **The allegations contained in paragraph 131 are denied as untrue.**

**Paragraph 131 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

132.    Plaintiffs do not ask this Court to resolve those Open Meetings Act violations, but offer them as evidentiary support for the pled counts below involving due-process violations based on predetermined outcomes and tortious interference.

**ANSWER:**    **The allegations contained in paragraph 132 are denied as untrue.**

**Paragraph 132 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

133.    A majority of the City Council intends to adopt the Post-Referendum Ordinance on August 21, 2023, to complete its predetermined illegal deal with OI, Highwire, Nu Group, and Rocky North and thwart, again, the will of the voters of Menominee.

**ANSWER:**    **The allegations contained in paragraph 133 are denied as untrue.**

**Paragraph 133 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

### COUNT I - DENIAL OF PROCEDURAL DUE PROCESS
### (CITY)

134.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**    **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 133 as if fully set forth herein.**

135.     As set forth above, because of the secret Exhibit 3, Settlement Agreement and Release, which was negotiated through prohibited round-robin communications by City Council members in violation of OMA, RIZE and TFS were both denied a full and fair opportunity to be heard, and to participate in, the decision of the City Council Members to execute Exhibit 3 and to effectively participate in the adoption of the Settlement Ordinance on June 29, 2023.

**ANSWER:**     **The allegations contained in paragraph 135 are denied as untrue.**

136.     The inclusion of the secrecy provision, "7. Limitation on Disclosing Contents", in Exhibit 3 is *prima facie* evidence of this lack of procedural due process.

**ANSWER:**     **The allegations contained in paragraph 136 are denied as untrue.**

**Paragraph 136 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

137.     The execution by signatures of all the former plaintiff companies' (including OI, Highwire, Nu Group, and Rocky North) lawyers and business principals, i.e. that the deal was done, before submission at a public hearing is further proof of this lack of procedural due process.

**ANSWER:**     **The allegations contained in paragraph 137 are denied as untrue.**

**Paragraph 137 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

138.     The orchestrated actions by the majority of the City Council in concert with OI, Highwire, Nu Group, and Rocky North, in the face of a referendum and promulgating a new ordinance which is largely identical to prior iterations is other *prima facie* evidence of a decision made long before any public hearings occurred.

**ANSWER:**     **The allegations contained in paragraph 138 are denied as untrue.**

**Paragraph 138 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

139.    As set forth above, RIZE and TFS were denied a full and fair opportunity to be heard and to participate in (a) **Exhibit 1**, the Settlement and Release Agreement, (b) City Council's adoption of the Settlement Ordinance on June 29, 2023, (c) the special meeting on July 27, 2023 and (d) the likely identical Post-Referendum ordinance to be adopted on August 21, 2023, because **Exhibit 3**, Settlement and Release Agreement, which was negotiated in secret, required the adoption of ordinances like the Settlement Ordinance and the Post Referendum Ordinance required a predetermined outcome.

**ANSWER:**     **The allegations contained in paragraph 139 are denied as untrue.**

**Paragraph 139 further contains improperly pled legal contentions. To**

**the extent a response is needed, defendant denies these legal**

**contentions as untrue.**

140.    Thus the outcome of the City Council's decision to adopt the Settlement Ordinance, the decisions of the July 27 Special Meeting, and likely adoption of the Post Referendum Ordinance were all pre-determined, as was **Exhibit 1**, the Settlement Release and Agreement.

**ANSWER:**     **The allegations contained in paragraph 140 are denied as untrue.**

141.    City's acts as described above deprived RIZE and TFS of their right to procedural due process, as guaranteed under the United States Constitution, including Amendments V and XIV of the United States Constitution, and the Michigan Constitution of 1963, including art 1, § 2, art 1, § 17, and art 10, § 2.

**ANSWER:**     **The allegations contained in paragraph 141 are denied as untrue.**

**Paragraph 141 further contains improperly pled legal contentions. To**

**the extent a response is needed, defendant denies these legal**

**contentions as untrue.**

**COUNT TWO - DENIAL OF SUBSTANTIVE DUE PROCESS (FAILURE TO ADVANCE A REASONABLE GOVERNMENTAL INTEREST) and/or ALTERNATIVELY, ARBITRARY AND CAPRICIOUS INTERFERENCE WITH RIZE'S AND TFS' PROPERTY INTERESTS IN THEIR INCUMBENT LICENSES**
**(CITY)**

142.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**        **Defendant reaffirms and reincorporates its answers to paragraphs 1 –**

**141 as if fully set forth herein.**

143.    **Exhibit 3**, Settlement Agreement and Release, the Settlement Ordinance, the decisions of the July 27, 2023 special meeting, and the Post Referendum Ordinance and the application of any of those by City fail to advance a reasonable governmental interest as illustrated by the recitation of the facts above and below, including those acts designed to give OI, Highwire, Nu Group, and Rocky North extra-judicial and illegal competitive advantages, and conversely, disadvantage and burden and disrupt RIZE's and TFS's business expectancies and competitive models.

**ANSWER:**        **The allegations contained in paragraph 143 are denied as untrue.**

**Paragraph 143 further contains improperly pled legal contentions. To**

**the extent a response is needed, defendant denies these legal**

**contentions as untrue.**

144.    The acute favoritism shown to the non-City Defendants by City, and its City Council, and consequently, the disadvantageous burdens imposed by the City through **Exhibit 3**, Settlement Agreement and Release, and the fruits of this poisonous tree, the Settlement Ordinance, the Post-Referendum Ordinance, or any ordinance adopted after May 25, 2023, which are the products of an illegal agreement and not the work of democratic petitioning by the citizenry of Menominee, grants unfettered authority and discretion to City to intrude into the free market and burden certain parties while advantaging other parties, without any corollary advancement of a reasonable advancement of governmental interest.

**ANSWER:**        **The allegations contained in paragraph 144 are denied as untrue.**

**Paragraph 144 further contains improperly pled legal contentions. To**

**the extent a response is needed, defendant denies these legal**

**contentions as untrue.**

145.    The City's activities in connection with RIZE's and TFS' licenses fail to advance a reasonable governmental interest.

**ANSWER:**        **The allegations contained in paragraph 145 are denied as untrue.**

**Paragraph 145 further contains improperly pled legal contentions. To**

the extent a response is needed, defendant denies these legal contentions as untrue.

146.     In the same manner, City's actions here are not reasonably related to the public health, safety, welfare, or any other governmental interest.

**ANSWER:**     **The allegations contained in paragraph 146 are denied as untrue. Paragraph 146 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

147.     The acts of the City to adopt any ordinance to enforce the conditions of **Exhibit 3**, Settlement Agreement and Release, fail to advance any reasonable governmental interest and deprive RIZE and TFS of their rights and privileges secured under the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

**ANSWER:**     **The allegations contained in paragraph 147 are denied as untrue. Paragraph 147 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

148.     As an alternative basis, City violated the substantive due process rights of RIZE and TFS because City acted arbitrarily and capriciously through its execution of **Exhibit 3,** Settlement Agreement and Release, and any ordinances subsequent to Exhibit 3 which each deprive RIZE and TFS of their rights and privileges secured under the United States Constitution, Amendments V and XIV, 42 U.S.C.A. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

**ANSWER:**     **The allegations contained in paragraph 148 are denied as untrue. Paragraph 148 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

149.    City acted arbitrarily, unreasonably and unlawfully by placing unreasonable conditions and burdens on RIZE's and TFS's exercise of their current licenses that are not permitted by MRTMA or any other constitutional or statutory provision.

**ANSWER:**    **The allegations contained in paragraph 149 are denied as untrue.**

**Paragraph 149 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

150.    City's activities in adopting the Settlement Ordinance and any successors, and enforcing **Exhibit 3**, Settlement Agreement and Release are not reasonably related to the public health, safety, or welfare of City's citizens, or any other governmental interest.

**ANSWER:**    **The allegations contained in paragraph 150 are denied as untrue.**

**Paragraph 150 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

151.    City violated RIZE's and TFS' rights to be accorded substantive due process under the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, including art 1, § 17.

**ANSWER:**    **The allegations contained in paragraph 151 are denied as untrue.**

**Paragraph 151 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

### COUNT THREE – TAKING
### (CITY)

152.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**    **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 151 as if fully set forth herein.**

153.     Passing an ordinance and other improper acts by a municipality that impair property rights without substantially advancing a governmental interest constitute a taking without compensation in violation of the United States Constitution, Amendments V and XIV, 42 U.S.C. § 1983, and the Michigan Constitution of 1963, art 1, § 17 and art 10, § 2.

**ANSWER:**     **The allegations contained in paragraph 153 are denied as untrue.**

**Paragraph 153 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

154.     **Exhibit 3**, Settlement Agreement and Release, and the fruit of that poisonous tree, including the Settlement Ordinance, Post-Referendum Ordinance, and any successors adopted after May 25, 2023, individually and collectively, effectively confiscate RIZE's and TFS' property rights by, among other things, (a) devaluing and otherwise infringing upon their licenses to the tune of millions of dollars to assist private parties and (b) burdening RIZE's and TFS' licenses with extra costs – the Rubric application costs of $2 million for each of RIZE and TFS – that no other parties are obligated to pay or bear.

**ANSWER:**     **The allegations contained in paragraph 154 are denied as untrue.**

**Paragraph 154 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

155.     City's application and enforcement of the terms of **Exhibit 1**, the Settlement Agreement and Release, and any ordinance based on that agreement, arbitrarily places restrictions on the use of private property and deprives private property owners of their right to exercise dominion and control over their property.

**ANSWER:**     **The allegations contained in paragraph 155 are denied as untrue.**

**Paragraph 155 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

156.     City's application and enforcement of the terms of the Settlement Agreement and Release, and any ordinance based on that agreement, places unlimited, subjective discretion in the hands of the City's officials without objective criteria or standards and, as such, they constitute a taking of the Properties.

**ANSWER:**	**The allegations contained in paragraph 156 are denied as untrue. Paragraph 156 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

157.	In addition to the permanent deprivation of RIZE's property and TFS' property, City has effectuated a taking of their properties without payment of just compensation, minimally requiring the payment of just compensation from May 25, 2023, until the relief requested here is granted.

**ANSWER:**	**The allegations contained in paragraph 157 are denied as untrue. Paragraph 157 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

## COUNT FOUR - DENIAL OF EQUAL PROTECTION
## (CITY)

158.	Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**	**Defendant reaffirms and reincorporates its answers to paragraphs 1 – 157 as if fully set forth herein.**

159.	As set forth above, the City treated both RIZE and TFS differently from other similarly-situated entities who initially applied for licenses in 2021, including OI Holdings, Highwire, Nu Group, and Rocky North, and so denied equal protection of the law to RIZE and TFS by City.

**ANSWER:**	**The allegations contained in paragraph 159 are denied as untrue. Paragraph 159 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

160.    The City's grants of an automatic license to OI, Highwire, Nu Group, and Rocky North in Exhibit 3, but not to RIZE and TFS, nor any other CRA-approved retailer applicants constitute disparate and unequal treatment of similarly situated applicants, and lacks a rational basis.

**ANSWER:**    **The allegations contained in paragraph 160 are denied as untrue. Paragraph 160 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

161.    The City's refusal to accept applications from any CRA-approved retailer applicants, including RIZE and TFS, unless each of OI, Highwire, Nu Group, Rocky North, Lume, and Agri-Med *first* receive a license, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as the Michigan Constitution of 1963, art 1, § 2, which provide that no person shall be denied equal protection of the law.

**ANSWER:**    **The allegations contained in paragraph 161 are denied as untrue. Paragraph 161 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

162.    The City's requirement that RIZE and TFS, and only RIZE and TFS of the 2021 applicants, adhere to their 2021 Rubric application representations, and not requiring the same of OI, Highwire, Nu Group, or Rocky North, discriminates against RIZE and TFS in their lawful use of their licenses.

**ANSWER:**    **The allegations contained in paragraph 162 are denied as untrue. Paragraph 162 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

163.    The City's requiring RIZE and TFS, to apply for a new license, instead of a renewal of their current license, to gain relief from adhering to their 2021 Rubric representations also constitutes disparate treatment without a rational basis, and along with the facts alleged above, constitutes unconstitutional "class of one" treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564; 120 S Ct 1073; 145 L.Ed.2d 1060 (2000).

**ANSWER:**   **The allegations contained in paragraph 163 are denied as untrue. Paragraph 163 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

### COUNT FIVE – DECLARATORY JUDGMENT
### (ALL DEFENDANTS)

164.   Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**   **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 163 as if fully set forth herein.**

165.   Under 28 U.S.C. § 2201, courts may grant declaratory relief "in a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare such the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

**ANSWER:**   **Paragraph 165 contains improperly pled legal contentions. To the extent a response is needed, defendant admits that portions of 28 U.S.C. 2201 are accurately quoted out of context.**

166.   An actual controversy exists between the parties as to the validity of Exhibit 3, Settlement Agreement and Release and its progeny, the Settlement Ordinance, and the actions of all Defendants related to those documents.

**ANSWER:**   **The allegations contained in paragraph 166 are denied as untrue. Paragraph 166 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

167.   Among other things, Exhibit 3 is an impermissible, illegal and unconstitutional agreement because (a) it is not based on adequate consideration; (b) City does not have the authority under MRTMA to award licenses to OI, Highwire, Nu Group and Rocky North without first receiving an application; (c) City does not have the authority under MRTMA,

the Due Process Clause and the Equal Protection Clause to preclude eligible applicants from applying under the Settlement ordinance, as an uncapped and unlimited licensing regime, unless and until OI, Highwire, Nu Group, Rocky North, Lume and Agri-Med have each received a license; (d) City does not have the authority under MRTMA, the Due Process Clause and the Equal Protection Clause to burden only RIZE and TFS with complying with the representations made in their Rubric applications under a Section 9(4) competitive process under MRTMA, once the same municipality amends it ordinance to an uncapped or unlimited license regime; and (e) City does not have the authority under the Due Process Clause to require RIZE and TFS to apply as new applicants once they have vested property interests.

**ANSWER:** **The allegations contained in paragraph 167 are denied as untrue. Paragraph 167 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

168.    The City does not have the authority to adopt any ordinance where it is based on and/or to execute the terms of conditions of Exhibit 3.

**ANSWER:** **The allegations contained in paragraph 168 are denied as untrue.**

169.    Accordingly, both Exhibit 3 and any ordinances based on or related to that exhibit are unauthorized and violate statutory law such as MRTMA while also abridging and abrogating the rights and privileges guaranteed by both the United States Constitution and the Michigan Constitution of 1963.

**ANSWER:** **The allegations contained in paragraph 169 are denied as untrue. Paragraph 169 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

### COUNT SIX – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES (OI, HIGHWIRE, ROCKY NORTH, NU GROUP)

170.    Plaintiffs RIZE and TFS each reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:** **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 169 as if fully set forth herein.**

171.    Plaintiff RIZE have business expectancies and an advantageous relationship with the City of Menominee as a result of being awarded one of two Retailer Licenses in September of 2021 after a competitive process conducted in compliance with both MRTMA and the Ordinance.

**ANSWER:**      **The allegations contained in paragraph 171 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 171.**

172.    Plaintiff TFS had business expectancies and an advantageous relationship with the City of Menominee as a result of being awarded one of two Retailer Licenses in September of 2021 after a competitive process conducted in compliance with both MRTMA and the Ordinance.

**ANSWER:**      **The allegations contained in paragraph 172 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 172.**

173.    Because of the two-license limitation in the Ordinance and City's location on the Wisconsin border where consumers from up to four states would regularly patronize RIZE and TFS these business expectancies were worth millions of dollars based on the experience of RIZE and TFS and others in other border communities and based on data collected by the CRA and industry groups.

**ANSWER:**      **The allegations contained in paragraph 173 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 173.**

174.    Defendants OI, Highwire, Nu Group, and Rocky North – as former applicants in Menominee - knew of the business relationships and expectancies between RIZE and TFS and the City, and between RIZE and TFS and their customers.

**ANSWER:**    The allegations contained in paragraph 174 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 174.

175.    By their conduct, in concert with the acts of individual City Council members, described above to include, among other things, (a) unconsented-to attorney contacts to represented party opponents in violation of MRP 4.2, (b) private meetings between company agents and lawyers with City Council members about issues that inure to the pecuniary interests of City Council members, (c) the secrecy provision, Section 7, "Limitation on Disclosing Contents", in Exhibit 3, Settlement Agreement and Release, which allowed OI, Highwire, Nu Group, and Rocky North to secretly negotiate consensus with a majority of the City Council before either the public or RIZE or TFS could find out and voice an opinion, (d) watering down the strict ethical rules of the Ordinance to the loose prohibitions of the Settlement Ordinance (and the Post Referendum Ordinance) which allows City Council members to profit from the marihuana business in Menominee as long as those City officials do not directly or indirectly own or operate or have a license; (e) requiring the City to give OI, Highwire, Rocky North, and Nu Group a head start in the new process under the Settlement Ordinance that include: (i) OI, Highwire, Rocky North, and Nu Group get licenses before anyone else and (ii) precluding anyone from applying, including RIZE and TFS, for a license unless and until OI, Highwire, Rocky North, Nu Group get licenses; and (f) effectively requiring RIZE and TFS to adhere to the multi-million pledges in their 2021 Rubric applications, while relieving OI, Highwire, Rocky North, and Nu Group of any similar representations or pledges.

**ANSWER:**    The allegations contained in paragraph 175 are not directed to defendant. To the extent that an answer is called for, the allegations contained in paragraph 175 are denied as untrue.

176.    All these acts of interference are improper and in violation of the MRPC, various provisions of MRTMA, and common rules of ethical conduct, including the incumbent general ethical rules governing City officials in the Menominee Code of Ordinances, Division 3- Code Ethics, Section 2-102 *et seq*.

**ANSWER:**    The allegations contained in paragraph 176 are not directed to defendant. To the extent that an answer is called for, the allegations contained in paragraph 176 are denied as untrue.

177.    The actions of Defendants were fraudulent, unlawful, unethical, unjustified, and *per se* wrong, and were done with malice for the improper purpose of causing the termination or disruption of RIZE's and TFS' licenses as well business relationships and expectancies with City and their prospective customers.

**ANSWER:**    **The allegations contained in paragraph 177 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 177.**

178.    As a direct and proximate result of the acts of improper interference by OI, Highwire, Nu Group, and Rocky North, RIZE and TFS have suffered both substantial irreparable and compensable injuries that were reasonably foreseeable by Defendants, including loss of goodwill, harm to their business reputations, loss of esteem and standing in the community, loss of business opportunities, as well as diminution of the value of their licenses and continuing financial burdens on their licenses that are not imposed on any others.

**ANSWER:**    **The allegations contained in paragraph 178 are not directed to defendant. To the extent that an answer is called for, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 178.**

### COUNT SEVEN – INJUNCTIVE RELIEF

179.    Plaintiffs RIZE and TFS reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**    **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 178 as if fully set forth herein.**

180.    This Court has the authority to issue both preliminary and permanent injunctions enjoining City from enforcing unconstitutional municipal ordinances and unconstitutional municipal acts and/or the unconstitutional application by City officials of constitutionally compliant ordinance provisions.

**ANSWER:**    **The allegations contained in paragraph 180 are denied as untrue as the Court lacks subject matter jurisdiction over this dispute.**

181.    In deciding whether a party is entitled to a preliminary injunction, courts must consider whether:

(a)    Plaintiff has shown a likelihood of success on the merits;
(b)    Plaintiff will be irreparably harmed if an injunction is not issued;
(c)    Issuance of a preliminary injunction would not cause substantial harm to others; and
(d)    The public interest would be served by issuing a preliminary injunction.

**ANSWER:**      **Paragraph 181 contains improperly pled legal contentions. To the extent a response is needed, defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions asserted.**

182.    To issue a permanent injunction, the Court must be satisfied of the following:

(a)    Plaintiff has suffered an irreparable injury;
(b)    The remedies available at law are inadequate;
(c)    The balance of hardships each party would suffer as a result of the injunction are fair; and
(d)    An injunction would serve the public interest.

**ANSWER:**      **Paragraph 182 contains improperly pled legal contentions. To the extent a response is needed, defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions asserted.**

183.    RIZE and TFS have demonstrated they are likely to prevail on the merits because, among other reasons, Exhibit 3, Settlement Agreement and Release violates MRTMA and as well as the Equal Protection and Due Process clauses in its treatment of RIZE and TFS.

**ANSWER:**      **The allegations contained in paragraph 183 are denied as untrue. Paragraph 183 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

184.    Enjoining the violation of RIZE's and TFS' constitutional rights and privileges (and statutory rights under MRTMA) cannot cause harm, let alone substantial harm, to City; indeed, enjoining the City's unconstitutional acts will inure to City's benefit and to the benefit of the general public.

**ANSWER:**     **The allegations contained in paragraph 184 are denied as untrue. Paragraph 184 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

185.    There is no remedy at law that could adequately compensate Plaintiffs' for the injury to their Constitutional rights that Defendants conspired to cause.

**ANSWER:**     **The allegations contained in paragraph 185 are denied as untrue.**

186.    The public interest is always served by the enjoinder of unconstitutional acts, and acts that violate state statutes like MRTMA, and ethical rules such as the Michigan Rules of Professional Conduct and Menominee's longstanding ethical ordinance.

**ANSWER:**     **The allegations contained in paragraph 186 are denied as untrue. Paragraph 186 further contains improperly pled legal contentions. To the extent a response is needed, defendant denies these legal contentions as untrue.**

**COUNT EIGHT – CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

187.    Plaintiffs RIZE and TFS reallege and restate the allegations contained in the above (and below) paragraphs as if fully set forth here.

**ANSWER:**     **Defendant reaffirms and reincorporates its answers to paragraphs 1 – 186 as if fully set forth herein.**

188.    "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019).

**ANSWER:**     **Paragraph 188 contains improperly pled legal contentions. To the extent a response is needed, defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions asserted.**

189.    To prove a civil conspiracy claim, a plaintiff must show that there was a (1) single plan (2) to accomplish the same general objective (3) that an overt action was taken to accomplish.

**ANSWER:**       **Paragraph 189 contains improperly pled legal contentions. To the extent a response is needed, defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions asserted.**

190.    Here, the Defendants conspired to perform and performed actions to cause injury to RIZE's and TFS' Constitutional rights to due process and equal protection of the law.

**ANSWER:**       **The allegations contained in paragraph 190 are denied as untrue.**

191.    A majority of the Menominee City Council, acting on behalf of Defendant City, created a plan with the private Defendants to open the door to profiteering by members of the Menominee City Council, permit new marijuana businesses to engage in private commerce without making the same substantial publicly beneficial investment commitments that RIZE and TFS were required to make, and to deprive Menominee's citizens from participating in—or even knowing about—deliberations or decisions on Menominee public policy.

**ANSWER:**       **The allegations contained in paragraph 191 are denied as untrue.**

192.    Their actions amounted to nothing more than an ill-concealed conspiracy to deprive RIZE and TFS of their Constitutional rights to due process and equal protection of the law and to tortiously interfere with the business expectancies that RIZE and TFS rightfully developed as a result of the substantial financial commitments they made in their 2021 Rubric applications.

**ANSWER:**       **The allegations contained in paragraph 192 are denied as untrue.**

193.    The conspirators accomplished their plan through, among other things, (a) unconsented-to attorney contacts to represented party opponents in violation of MRP 4.2, (b) private meetings between company agents and lawyers with City Council members about issues that inure to the pecuniary interests of City Council members, (c) the secrecy provision, Section 7, "Limitation on Disclosing Contents", in Exhibit 3, Settlement Agreement and Release, which allowed OI, Highwire, Nu Group, and Rocky North to secretly negotiate consensus with a majority of the City Council before either the public or RIZE or TFS could find out and voice an opinion, (d) watering down the strict ethical rules of the Ordinance to the loose prohibitions of the Settlement Ordinance (and the Post Referendum Ordinance) which allows City Council members to profit from the marihuana business in Menominee as long as those City officials do not directly or indirectly own or operate or have a license; (e) requiring the City to give OI, Highwire, Rocky North, and Nu Group a head start in the new process under the Settlement Ordinance that include: (i) OI, Highwire, Rocky North, and Nu

Group get licenses before anyone else and (ii) precluding anyone from applying, including RIZE and TFS, for a license unless and until OI, Highwire, Rocky North, Nu Group get licenses; and (f) effectively requiring RIZE and TFS to adhere to the multi-million pledges in their 2021 Rubric applications, while relieving OI, Highwire, Rocky North, and Nu Group of any similar representations or pledges.

**ANSWER:**      **The allegations contained in paragraph 193 are denied as untrue.**

## AFFIRMATIVE DEFENSES

The Defendant, CITY OF MENOMINEE, raises the following affirmative defenses to the

Plaintiff's Complaint:

1. The complaint fails to state a claim upon which relief can be granted.

2. This Court lacks subject matter jurisdiction over this case.

3. Plaintiffs claims may be barred by the doctrine of *res judicata*.

4. Plaintiffs have failed to identify a protected property interest.

5. Plaintiffs have failed to plead and prove an absence of adequate state remedies.

6. Plaintiffs do not possess a protected property interest in another individual or entity's property.

7. The Court should abstain from exercising jurisdiction over this matter based on the *Pullman* Abstention Doctrine.

8. The Court should abstain from exercising jurisdiction over this matter based on the *Burford* Abstention Doctrine.

9. Plaintiffs may have failed to mitigate their damages.

Respectfully submitted,

DATED:  October 31, 2023            PLUNKETT COONEY


BY:  /s/ Charles L. Bogren
          Charles L. Bogren (P82824)
          Michael S. Bogren (P34835)
          Attorneys for Defendant Menominee
          333 Bridge Street, N.W., Suite 530
          Grand Rapids, Michigan  49503
          **Direct Dial:  616-752-4600**
          **cbogren@plunkettcooney.com**
          mbogren@plunkettcooney.com

## JURY DEMAND

NOW COMES defendant, CITY OF MENOMINEE, by and through its attorneys, PLUNKETT COONEY, and hereby demands a trial by jury in this matter.


Respectfully submitted,

DATED:  October 31, 2023            PLUNKETT COONEY


BY:  /s/ Charles L. Bogren
          Charles L. Bogren (P82824)
          Michael S. Bogren (P34835)
          Attorneys for Defendant Menominee
          333 Bridge Street, N.W., Suite 530
          Grand Rapids, Michigan  49503
          **Direct Dial:  616-752-4600**
          **cbogren@plunkettcooney.com**
          mbogren@plunkettcooney.com

Open.00560.33108.32024870-1